Michael C. TUITT, Plaintiff, Appellant,

v.

Michael FAIR, Massachusetts Commissioner of Corrections, Defendant, Appellee.

No. 86–1808.

United States Court of Appeals, First Circuit.

Heard Feb. 4, 1987.

Decided June 4, 1987.

Souweine & Nasser, Northampton, Mass., was on brief, for plaintiff, appellant.

Barbara A.H. Smith, Asst. Atty. Gen., with whom Francis X. Bellotti, Atty. Gen., Frederick W. Riley and Annette C. Benedetto, Asst. Attys. Gen., Boston, Mass., were on brief, for defendant, appellee.

Before CAMPBELL, Chief Judge, ALDRICH and SELYA, Circuit Judges.

LEVIN H. CAMPBELL, Chief Judge.

Petitioner Michael C. Tuitt appeals from a judgment of the United States District Court for the District of Massachusetts denying his petition for a writ of habeas corpus under 28 U.S.C. § 2254 (1982). Arguing on appeal that the district court erred in withholding habeas relief, Tuitt emphasizes the following purported errors by the Massachusetts Superior Court that convicted him. He says the superior court infringed his Sixth Amendment right to counsel when it denied his requests for a continuance and for substitute counsel. He says that the superior court impermissibly denied his request to proceed pro se. Finally, he says that the Massachusetts habitual offender statute, Mass.Gen.Laws ch. 279, § 25 (1984), under which he received a life sentence, is unconstitutionally vague, and that his life sentence violated the Eighth Amendment guarantee against cruel and unusual punishment.

Tuitt first raised these contentions, unsuccessfully, in an appeal taken from his state conviction to the Massachusetts Supreme Judicial Court. *Commonwealth v. Tuitt*, 393 Mass. 801, 473 N.E.2d 1103 (1985). After affirmance of his conviction by that court, he brought this habeas corpus petition in the federal district court.

## I.

The facts which the jury could have found at Tuitt's state criminal trial are essentially these. On June 14, 1982, one Sylvester Jackson was driving to the bank in Springfield, Massachusetts, to deposit $4,000 in receipts from two liquor stores. He stopped at the corner of Monroe and

William C. Newman, by Appointment of the Court, with whom Lesser, Newman,

Hancock Streets because a blue Chevrolet, later identified as an automobile registered to Tuitt's mother, was blocking his way. Two men suddenly opened the doors on each side of Jackson's automobile. The man on the driver's side of Jackson's vehicle, later identified by an eyewitness as Tuitt, threatened Jackson with a pistol similar to the one seized from Tuitt at the time of his arrest approximately three weeks later. This assailant demanded, "Give me the money. Don't get killed over anybody else's money." The other assailant grabbed the money from the front seat and passed it to Tuitt. Tuitt ran to the blue Chevrolet that was blocking the street and removed his ski mask.

Elaine Hatche, a traffic safety monitor, testified that she was on her way to work when she witnessed the robbery. She watched as the assailant ran to the Chevrolet and got in. The assailant pulled off his ski mask and looked at her. She later identified that assailant as Tuitt. She also identified the gun taken from Tuitt and the car as having been used in the robbery. She had seen Tuitt in the neighborhood before that day but did not know him by name.

McCrary Ranson testified that on June 14, 1982 he was working at his restaurant located near the robbery scene. He had known Tuitt for 20 years. At the time of the robbery, Ranson was standing in front of the restaurant when the sound of squealing tires drew his attention down the street. He saw Tuitt driving the blue Chevrolet, a car Ranson had seen the petitioner drive many times before, including the day before the robbery.

Tuitt was found guilty of armed robbery while masked, Mass.Gen.Laws ch. 265, § 17 (1984), and carrying a firearm without lawful authority, Mass.Gen.Laws ch. 269, § 10 (1984). The court immediately considered the issue of whether Tuitt was a habitual offender. Evidence was introduced which showed that Tuitt had been convicted in 1977 of breaking and entering in the daytime; that he had been convicted in 1978 of armed robbery and assault with a dangerous weapon; that he had also been convicted in 1978 of possession of a sawed-off shotgun, carrying a firearm in a motor vehicle without authority, and assault and battery by means of a dangerous weapon.

The jury found that Tuitt was a habitual offender. Under Massachusetts law, a habitual offender is punished by imprisonment for the maximum term provided for the felony for which he is to be sentenced, Mass.Gen.Laws ch. 279, § 25 (1984). Since life imprisonment is the maximum sentence for armed robbery while masked, Tuitt received a life sentence.

The facts which gave rise to Tuitt's claims of interference with his right to counsel and to proceed pro se are as follows. Tuitt's trial was first scheduled for October 6, 1982. A continuance was granted at Tuitt's request, and trial was rescheduled for October 20, 1982. At all relevant times Tuitt was represented by court-appointed counsel, a Mr. Rubin. On the day appointed for trial, October 20, Tuitt presented two motions. He moved to continue the trial because his attorney was not prepared. He also moved to dismiss his attorney and to substitute different, unspecified counsel stating, "Also my girl friend has spoke to a couple of lawyers and at this time I am able to retain my own attorney and wish to do so."

The court denied both motions. In respect to the motion to dismiss Mr. Rubin, the court stated, in a memorandum,

> The defendant after filing a motion for a continuance, which this court denied, filed a motion to dismiss court-appointed attorney and allow the defendant leave to obtain private counsel.... [The court then discussed petitioner's related motion to proceed pro se, discussed *infra*.] The defendant made some unsubstantiated and unfounded allegations of the incompetence of counsel and made some vague references to contacting other attorneys who would represent him in this case. It is to be noted that no appearances were filed nor was there any indication to the court directly or indirectly by any counsel of his intent to appear any time in the case.

This motion was filed for the first time on the day of trial and indeed this was the first time that defense counsel had been given any notice that the defendant was not satisfied with his representation.

I find that this unsupported motion is dilatory, without substance. Indeed, a review of the docket entries will clearly indicate that Attorney Rubin was exhaustive in his discovery, obtained all the necessary documentation that one would anticipate he would seek during the discovery process, assigned an investigator to investigate the factual background of the case and the witnesses, and presented a number of pre-trial motions, most of which were acted upon favorably by this court.

In the courtroom, when the motion was denied, the court told Tuitt,

There is a motion ... to dismiss Court-appointed attorney; I will deny the motion, it is unsubstantiated, unsupported motion, and the Court does have a great deal of respect and admiration for Mr. Rubin as one of the most foremost trial lawyers, has a [reputation] I am familiar with in this community, and I question very sincerely whether or not you could get counsel that could match his capability and ability, and I certainly question whether or not you could get better defense from another source.

There being nothing to support the motion other than on a blanket allegation, I am going to deny the motion. I will, however, Mr. Tuitt, I am going to reserve your rights, your objection to my denying your motion on the record at this time.

The court then denied the motion for continuance, and the following colloquy occurred:

MR. TUITT: Your Honor, I'd like to go forward pro se then, because he's not prepared to take care of this case. I would like to go forward pro se and dispense with him as my attorney, and I don't want that to be construed as a waiver of attorney because I asked to have my own attorney, somebody that could look after my own interests, and it doesn't appear Mr. Rubin is looking after my interests very well, so, I just as soon go pro se.

THE COURT: Mr. Rubin, it is my understanding you are prepared to go forward and try this case?

MR. RUBIN: Yes, your Honor.

THE COURT: And Commonwealth is ready to go forward and try this case?

MR. BLOOM: Yes, Judge.

THE COURT: Mr. Tuitt, you have a Constitutional right to proceed pro se—

MR. TUITT: I would like to proceed pro se, then.

THE COURT: I am going to entertain that motion, but in the event that—I want you to know, in the event that I do rule on it, I allow you to go pro se, Mr. Rubin will remain in this case as stand-by counsel, should anything develop in the course of the trial it may get inconvenient or impossible for you to represent your own interest, then Mr. Rubin will be in a position as stand-by attorney to proceed through the progression of the trial of this case.

He will also be available during the course of the trial for any advice or information you may desire, make his file available to you, to explain anything that is in his file, but he will be available at all times during the course of this trial.

MR. TUITT: I don't want him to represent me, I don't want him available, I would like to have my own attorney.

THE COURT: He will be available and remain available as stand-by counsel. I will, however—you understand what the effect is of your waiving an attorney?

MR. TUITT: I have not waived an attorney, your Honor, I do not want this man to represent me, and I don't want my going pro se to be construed as me waiving my right to counsel. I do want counsel.

I am not a learned person in the law, I want counsel but this man is not prepared to represent me.

THE COURT: You know what it means to go pro se, without an attorney representing you?

MR. TUITT: Yes.

THE COURT: You know—

MR. TUITT: I don't want, again, for the record, I am not waiving my right to an attorney. This man has not prepared my case. He sat there and told you he is ready to go forward with the trial, he is not ready, he hasn't even spoken to my witnesses.

THE COURT: Do you wish to waive your attorney? Then you may do so.

MR. TUITT: I am not waiving nothing.

THE COURT: Any further motions?

The court then took up other pending motions which are not at issue in this case. At the end of the day the court told Tuitt,

THE COURT: It is 4:00 o'clock. I will take motion as far as representing yourself pro se under advisement, I will advise you in the morning whatever the decision.

We will impanel a jury tomorrow morning to commence this trial, understand that, Mr. Tuitt?

MR. TUITT: I understand, your Honor. And still for the record I'd like to say that I am not ready to go forward with this case, it hasn't been prepared by myself or by the Court-appointed attorney, and if I were to use the Court-appointed attorney it would just be ineffective assistance of counsel, and I'm not waiving my right to counsel, but I don't want him, and I know we are ready to go forward with this case.

THE COURT: I appreciate that is your position, Mr. Tuitt, and I have already ruled on that.

MR. TUITT: I want to state that for the record.

THE COURT: It is certainly a matter of the record and need not be restated. We will proceed tomorrow morning.

The court then adjourned for the day. On the following day, October 21, Tuitt restated his dissatisfaction with his court-appointed attorney. The court again denied Tuitt's request for a new attorney, and the following conversation occurred:

MR. TUITT: I would like to have the record show that I do not want this man to represent me. I do not want a Court-appointed attorney forced upon me against my will. I am able to retain my own counsel. This is not a delaying tactic.

THE COURT: Mr. Tuitt, we've been over that. Please. I have denied your motion. We are going to proceed with the trial in these cases. It's on the record now. Is there any other loose ends? In response to other loose ends, as I understand it, you have requested to proceed pro se. Is that correct, Mr. Tuitt? You want to proceed pro se on your own, without a lawyer?

MR. TUITT: Without this attorney. I want an attorney of my own choice. I do not want Mr. Rubin or the Massachusetts Defenders Committee because he has not properly prepared this. [Petitioner then recounted his complaints about his court-appointed attorney.]

THE COURT: My understanding of the case law, as I read it, the right to proceed on your own, your own defense pro se, as we call it, is a qualified right and I will allow you to proceed to try this case on your own behalf without counsel.

I will allow you to proceed in that sense only, only if you waive counsel. If you do not waive counsel, then you will proceed to the trial of this case with Mr. Rubin. I give you the option. Whichever way you want to go.

MR. TUITT: Again, your Honor, you're telling me to either go pro se or force this Court-appointed attorney on me, which I can provide myself with my own attorney.

THE COURT: If you waive attorney, you may proceed pro se and I will not force anybody upon you.

MR. TUITT: I'm not waiving any of my rights. I do not want this attorney to represent me and I do want to proceed pro se, but I'm not going to waive my rights to counsel of my choice.

THE COURT: If you will not waive counsel for the purpose of this trial, then I will deny your motion to proceed pro se. The case will proceed with Mr. Rubin being your lawyer.

Mr. Rubin, the court-appointed attorney, then asked to be excused since his client

was expressing a lack of confidence in his abilities. When Mr. Rubin asserted that, in any event, he would try this case to the best of his professional capabilities, the court denied his request to withdraw. The court agreed to allow Tuitt to act as co-counsel at his trial.

In a written opinion, dated October 21, 1982, the court explained why the motion to proceed pro se was denied:

The right to proceed pro se is not an absolute but rather a qualified right.

I asked the defendant whether he was willing to waive his right to an attorney at the time of trial, and he informed the court that he refused to waive his right to an attorney but indeed insisted upon his right to an attorney.... [The court then stated its position on the related motion to dismiss the court-appointed counsel, discussed *supra*.] The defendant then filed an oral motion that he be allowed to proceed pro se. I inquired of the defendant whether or not he was waiving his right to counsel, and he indicated that he had no intent to waive his right to an attorney but that if he could not have attorneys of his choosing, then he would prefer to represent himself in that he did not want Mr. Rubin to represent him. The defendant made it quite clear, therefore, that he would not waive his right to an attorney for the purposes of this trial.

I find his oral request to proceed pro se without waiving his right to an attorney is equivocal and that the defendant's purpose in seeking to proceed pro se without the waiver of the right to an attorney was for the purpose of delay. I assured the defendant that if he wanted to proceed pro se, I would allow him to proceed, but that in order for him to proceed and represent himself, I required him to waive his right to have an attorney represent him at the time of trial, informing him that I would appoint standby counsel to assist him.

See *Commonwealth v. Mott*, 2 Mass. App.Ct. at 47 [308 N.E.2d 557 (1974)]; *Commonwealth v. Flowers*, 5 Mass. App.Ct. at 557 [365 N.E.2d 839 (1977)] (cert. denied 434 U.S. 1077 [98 S.Ct. 1269, 55 L.Ed.2d 783 (1978)]); *Commonwealth v. Chapman*, (1979) Mass.App.Ct. 1695; *Faretta v. California*, 422 U.S. [806] at 835 [95 S.Ct. 2525, 45 L.Ed.2d 562 (1975)]. The defendant's motion to dismiss court-appointed counsel and his oral amendment to that motion to proceed pro se is denied.

## II.

Tuitt contends that his Sixth and Fourteenth Amendment rights were abridged by the superior court's denial of his motions to dismiss counsel and for a continuance that would allow him to find substitute counsel. We agree with the Massachusetts Supreme Judicial Court that this contention is, on these facts, entirely without merit. *Commonwealth v. Tuitt*, 473 N.E.2d at 1106–08.

▇ The right to counsel is subject to practical constraints. It is well settled that "the right of an accused to choose his own counsel cannot be insisted upon in a manner that will obstruct reasonable and orderly court procedure." *United States v. Poulack*, 556 F.2d 83, 86 (1st Cir.), *cert. denied*, 434 U.S. 986, 98 S.Ct. 613, 54 L.Ed.2d 480 (1977); *United States v. Welty*, 674 F.2d 185, 190 (3d Cir.1982). In *Poulack*, we approved the Third Circuit's comment that "[d]esirable as it is that a defendant obtain private counsel of his own choice, that goal must be weighed and balanced against an equally desirable public need for the efficient and effective administration of criminal justice." *Carey v. Rundle*, 409 F.2d 1210, 1214 (3d Cir.1969), *cert. denied*, 397 U.S. 946, 90 S.Ct. 964, 25 L.Ed.2d 127 (1970).

▇ A trial court has extensive discretion over last-minute requests for continuances made in order to secure substitute counsel. *United States v. Torres*, 793 F.2d 436, 440 (1st Cir.1986); *United States v. Welty*, 674 F.2d at 190; *United States v. Poulack*, 556 F.2d at 86. "In reviewing the court's exercise of discretion, we must pay particular attention to 'the reasons presented to the trial judge at the time the request is denied.'" *Torres*, 793 F.2d at

440 (quoting *Ungar v. Sarafite*, 376 U.S. 575, 589, 84 S.Ct. 841, 849, 11 L.Ed.2d 921 (1964)).

In *Morris v. Slappy*, 461 U.S. 1, 103 S.Ct. 1610, 75 L.Ed.2d 610 (1983), the Supreme Court had before it a situation not unlike the present. There a state accused had unsuccessfully sought a continuance because he lacked confidence in the lawyer appointed to replace his original attorney, who was ill. The Ninth Circuit granted the writ of habeas corpus declaring that the state trial court had failed to give proper attention to the defendant's right to a meaningful attorney-client relationship. The Supreme Court reversed, stating that the Sixth Amendment right to counsel did not guarantee a meaningful attorney-client relationship because no court could ever guarantee such a right. *Id.* at 13, 103 S.Ct. at 1617. The Court observed,

> Not every restriction on counsel's time or opportunity to investigate or to consult with his client or otherwise to prepare for trial violates a defendant's Sixth Amendment right to counsel. *See Chambers v. Maroney*, 399 U.S. 42, 53–54 [90 S.Ct. 1975, 1982, 26 L.Ed.2d 419] (1970). Trial judges necessarily require a great deal of latitude in scheduling trials. Not the least of their problems is that of assembling the witnesses, lawyers, and jurors at the same place at the same time, and this burden counsels against continuances except for compelling reasons. Consequently, broad discretion must be granted trial courts on matters of continuances; only an unreasoning and arbitrary "insistence upon expeditiousness in the face of a justifiable request for delay" violates the right to the assistance of counsel. *Ungar v. Sarafite*, 376 U.S. 575, 589 [84 S.Ct. 841, 849, 11 L.Ed.2d 921] (1964).

*Id.* at 11–12, 103 S.Ct. at 1616.

Here the state trial judge made reasoned findings supporting his determination to proceed. Based on docket information, the court found that Rubin had been "exhaustive" in discovery, had presented various successful pre-trial motions and had assigned an investigator to investigate the factual background of the case and the witnesses. The court found the motion to dismiss Rubin "unsupported" and "dilatory, without substance." In so finding, the judge took into account the motion's eleventh-hour nature.

This motion was filed for the first time on the day of trial and indeed this was the first time that defense counsel had been given any notice that the defendant was not satisfied with his representation.

■ A last-minute request to substitute counsel should not be allowed to "become a vehicle for achieving delay." *United States v. Llanes*, 374 F.2d 712, 717 (2d Cir.1967) (quoted with approval in *United States v. Allen*, 789 F.2d 90, 93 (1st Cir. 1986)). *See also Torres*, 793 F.2d at 441 (court did not abuse discretion in denying motion to substitute counsel when motion made on day of trial); *Urquhart v. Lockhart*, 726 F.2d 1316, 1319 (8th Cir.1984) (trial court did not abuse discretion in denying defendant's motion, on the day of trial, for a continuance to secure new counsel).

■ Given the lateness of the continuance motion and the indicia of counsel's careful preparation and competence, the court was not required to accept Tuitt's bald assertions that witnesses had not been interviewed. "[J]ust as counsel is not required to waste the court's time pursuing frivolous legal motions, ... so too counsel need not chase wild factual geese when it appears, in light of informed professional judgment, that a defense is implausible or insubstantial...." *Cepulonis v. Ponte*, 699 F.2d 573, 575 (1st Cir.1983). *See United States v. Rodgers*, 755 F.2d 533, 541 (7th Cir.1985) (defendant seeking continuance in order to interview witnesses must show that witnesses will offer favorable testimony; otherwise defendants could "delay trial almost indefinitely on the speculation that some distant witness might provide favorable evidence"); *United States v. Miller*, 513 F.2d 791, 793 (5th Cir.1975) (movant for continuance must show that potential witness will tender favorable evidence).

■ There is no more merit in Tuitt's argument that, by seeking to withdraw, his court-appointed attorney conceded that he

was not ready to go forward. Counsel's only stated reason for offering to withdraw was his client's lack of confidence in him, not unpreparedness. Counsel represented that he was prepared to go forward, and to represent Tuitt to the best of his abilities if the court did not allow him to withdraw.

In *United States v. Allen,* we held that the defendant's own loss of confidence in his attorney was an insufficient reason to delay trial in order to substitute counsel. *Allen,* 789 F.2d at 93. As the Second Circuit has said, "a purely subjective standard would convert the requirement of good cause [to substitute counsel] into an empty formality since the defendant would be entitled to demand a reassignment of counsel simply on the basis of a 'breakdown in communication' which he himself induced." *McKee v. Harris,* 649 F.2d 927, 932 (2d Cir.1981), *cert. denied,* 456 U.S. 917, 102 S.Ct. 1773, 72 L.Ed.2d 177 (1982). To allow such a subjective view to justify appointment of new counsel would grant defendants unrestrained power to discontinue the trial. *Id.*

We have little difficulty concluding that the superior court did not abuse its discretion in rejecting as without substance Tuitt's motions for continuance and for dismissal of his court-appointed attorney.[1]

### III.

Tuitt argues that the Massachusetts Superior Court impermissibly infringed his right to proceed pro se when it insisted that he first waive his Sixth Amendment right to counsel. *Faretta v. California,* 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). When the trial judge denied Tuitt's motion to discharge his present counsel, Tuitt orally stated that he would rather proceed pro se than have the court-appointed attorney "forced" upon him. Petitioner asserts that by this statement he properly asserted his desire to proceed pro se and that, in forcing him to proceed with Mr. Rubin as his counsel, the superior court impermissibly denied his right to represent himself.[2] A dissenting justice of the Massachusetts Supreme Judicial Court agreed with this position. *Commonwealth v. Tuitt,* 473 N.E.2d at 1112–15 (O'Connor, J., dissenting).

The state trial judge found that Tuitt's request to proceed pro se was "equivocal" because Tuitt would not waive his right to counsel. The judge also found that petitioner's purpose in seeking to proceed pro se without waiver of the right to an attorney was "for the purpose of delay." In upholding the superior court, the Massachusetts Supreme Judicial Court held that, "[a]ssertion of the Sixth Amendment right to proceed pro se in a criminal matter must be predicated upon an unequivocal waiver of one's right to counsel." *Id.* at 1108.

There are at least two issues buried in Tuitt's claim that his right to proceed pro se was violated. The first is whether, as the Massachusetts Supreme Judicial Court ruled, an accused's right to proceed pro se can properly be conditioned upon his willingness to grant an "unequivocal waiver of the right to counsel." *Id.* The second is whether Tuitt was improperly made to think that, if he waived his right to counsel, he would surrender his right *to protest on appeal* the judge's refusal to let him discharge Mr. Rubin and seek alternate counsel.

---

1. Tuitt's argument that the superior court could not properly force him to choose between proceeding to trial with the unwanted attorney or representing himself is insubstantial. It is well settled that such a choice may be required provided that the court was not arbitrary in its refusal to continue and to allow dismissal of present counsel. *Maynard v. Meachum,* 545 F.2d 273, 278 (1st Cir.1976). *See also United States v. Welty,* 674 F.2d 185, 188 (3d Cir.1982); *Wilks v. Israel,* 627 F.2d 32, 35–36 (7th Cir.1980), *cert. denied,* 449 U.S. 1086, 101 S.Ct. 874, 66 L.Ed.2d 811 (1981).

2. We note that while the court stated that absent waiver of "counsel for the purpose of this trial," Mr. Rubin was to be Tuitt's lawyer, it later said Tuitt could act as co-counsel along with Rubin. Tuitt has not called to our attention any specific conduct by Mr. Rubin during the trial which allegedly worsened Tuitt's defense, as compared with how matters would have gone had Tuitt proceeded pro se.

We answer the first question in the affirmative. The second question is closer, but we believe Tuitt was not misled. We deal with each of the two issues in turn.

### A. Whether An Accused Who Wants To Proceed Pro Se May Be Required To Waive Unequivocally The Right To Counsel

■ The constitutional right of self-representation necessarily entails a waiver of the constitutional right to be represented by counsel. *See, e.g., Chapman v. United States,* 553 F.2d 886, 892 (5th Cir.1977); *Meeks v. Craven,* 482 F.2d 465, 467 (9th Cir.1973); *Richardson v. Lucas,* 741 F.2d 753, 756 (5th Cir.1984). As the Supreme Court explained in *Faretta v. California,* 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975), the case in which it recognized the constitutional right to self-representation,

> When an accused manages his own defense, he relinquishes, as a purely factual matter, many of the traditional benefits associated with the right to counsel. For this reason, in order to represent himself, the accused must "knowingly and intelligently" forgo those relinquished benefits. *Johnson v. Zerbst,* 304 U.S. [458] at 464–65 [58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938)]. Cf. *Von Moltke v. Gillies,* 332 U.S. 708, 723–24 [68 S.Ct. 316, 323, 92 L.Ed. 309 (1948)] (plurality opinion of Black, J.). Although a defendant need not himself have the skill and experience of a lawyer in order competently and intelligently to choose self-representation, he should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that "he knows what he is doing and his choice is made with eyes open." *Adams v. United States ex rel. McCann,* 317 U.S. [269] at 279 [63 S.Ct. 236, 242, 87 L.Ed. 268].

*Id.* at 835, 95 S.Ct. at 2541. *See also Mckaskle v. Wiggins,* 465 U.S. 168, 104 S.Ct. 944, 949, 79 L.Ed.2d 122 (1984) (defendant has "Sixth Amendment right to conduct his own defense, provided only that he knowingly and intelligently forgoes his right to counsel").

The clash of these two mutually exclusive constitutional rights can create a difficult situation for a trial court. The Fifth Circuit has stated,

> The election to defend pro se entails the waiver of the right to be represented by counsel. Hence the right of self-representation is conditioned on the "knowing and intelligent" relinquishment of the right to counsel.... Lest there be a case in which a defendant clearly asserts the right to defend pro se (so that the denial of the right would be error) without clearly waiving the right to counsel (so that there remains some question whether the waiver was knowing and intelligent), a trial judge should engage in a dialogue with such a defendant, explaining to him the consequences of defending pro se.

*Chapman v. United States,* 553 F.2d at 892.

When a defendant refuses to waive his right to counsel, while demanding to proceed pro se, the trial court will find it hard to know which constitutional right is being asserted, and which is being waived, especially since the right to an attorney is in effect until waived, while the alternative right to self-representation is not in effect until asserted. *Brown v. Wainwright,* 665 F.2d 607, 610 (5th Cir.1982). Where the two rights are in collision, the nature of the two rights makes it reasonable to favor the right to counsel which, if denied, leaves the average defendant helpless. *See Wainwright,* 665 F.2d at 611 ("In the absence of a clear and knowing election, a court should not quickly infer that a defendant unskilled in the law has waived counsel and has opted to conduct his own defense"; waiver of the right to proceed pro se is more easily inferred).

Recognizing the burden on trial courts when defendants refuse to waive the right to counsel, or do so equivocally, while also asserting a right to proceed pro se, the Ninth Circuit has required that a defendant's demand to proceed pro se be *unequivocal. Meeks v. Craven,* 482 F.2d 465 (9th Cir.1973).

The reason an "unequivocal" demand is required is that, otherwise, "convicted criminals would be given a ready tool with which to upset adverse verdicts after trials at which they had been represented by counsel." *United States ex rel. Maldonado v. Denno,* 348 F.2d [12] at 15–16 [2nd Cir.1965]. The trial judge is confronted with a conflict between two rights. He should not be presented with an impossible situation.... An "unequivocal" demand to proceed *pro se* should be, at the very least, sufficiently clear that if it is granted the defendant should not be able to turn about and urge that he was improperly denied counsel....

A trial judge always has a problem when a defendant waives his right to counsel and asserts his right to try his own case. Later, upon reflection, and with new counsel, the defendant is quite likely to mount a collateral attack upon his trial or plea, claiming either that he did not understand what he was doing or that the court should have forced counsel upon him.... We can find no constitutional rationale for placing trial courts in a position to be whipsawed by defendants clever enough to record an equivocal request to proceed without counsel in the expectation of a guaranteed error no matter which way the trial court rules. *See United States ex rel. Maldonado v. Denno,* 348 F.2d at 16.

*Meeks,* 482 F.2d at 467–68.

Similarly recognizing the trial courts' "unenviable position" when trying to reconcile these two conflicting constitutional rights, the D.C. Circuit has said,

Whereas before *Faretta* the focus of the judge was upon the constitutional necessity to provide counsel if a defendant's attempted waiver of his right to counsel was inadequate, now the judge is also bound by constitutional considerations to grant a request for self-representation if it appears that the choice of that right is, as the Supreme Court put it in *Faretta,* made "competently and intelligently."

*United States v. Bailey,* 675 F.2d 1292, 1300 (D.C.Cir.1982). *See also United States v. Bennett,* 539 F.2d 45, 50 (10th Cir.1976) (The right to self-representation is "one which the defendant must clearly and unequivocally assert before trial.... This is necessary because the trial court faces the difficult related problem of ascertaining whether there is an intelligent and voluntary waiver of the right to counsel.").

The Ninth Circuit's fear that a canny defendant may try to play one constitutional right against the other has been borne out in subsequent cases. In *United States v. Bailey,* 675 F.2d 1292 (D.C.Cir.1982), the defendant "earnestly sought, and succeeded in obtaining" the court's permission to proceed pro se. *Id.* at 1297. After proceeding pro se and being convicted, the defendant, on appeal, claimed that he had been deprived of his Sixth Amendment right to counsel because "the District Court failed to elicit an effective waiver of counsel before granting [the defendant's] request to represent himself." *Id.* The D.C. Circuit struggled mightily with this claim before rejecting it. It ended up requiring district courts, in the future, to warn defendants on the record of the dangers and disadvantages of self-representation. *Id.* at 1300.

In *Brown v. Wainwright,* 665 F.2d 607 (5th Cir.1982), prior to trial the defendant asked to proceed pro se because he was not satisfied with his counsel. The trial court was "reluctant to grant the motion." Later, counsel told the court that he and the defendant had resolved their difficulties. The attorney presented the case, but after all the evidence was in and just before closing arguments, defendant renewed his request to proceed pro se. This request was denied. In his habeas corpus appeal to the federal court, he claimed his right to self-representation had been impermissibly denied. *Id.* at 609–11. The Fifth Circuit (en banc) held that the defendant's right to self-representation had not been unconstitutionally denied, stating, "We affirm in this case the traditional judicial belief that in the absence of a *clear* and *unequivocal* waiver by defendant, a court should not deprive defendant of his right to counsel." *Id.* at 612 (emphasis added).

*Wilks v. Israel,* 627 F.2d 32 (7th Cir. 1980), illustrates the potential hazards inherent in allowing a defendant to represent himself without first securing an unequivocal waiver of his right to an attorney. The defendant there sought to discharge his court-appointed attorney, stating that he would represent himself if necessary. The court was reluctant to grant the dismissal but finally agreed to allow the defendant to present his own case. On the first day of trial the defendant told the court he had changed his mind and now wanted the attorney to represent him. The attorney conducted the defense up to and including examining the defendant on the stand. The defendant changed his mind again and sought, and was allowed, to dismiss his court-appointed attorney, although the attorney remained as a standy-by counsel. On a habeas petition to the federal court, the defendant unsuccessfully claimed that "he did not waive his right to counsel but instead insisted upon representation by an attorney; that the choice offered him—either self-representation or [the court-appointed attorney]—placed him in an untenable position which deprived him of his free choice; and that the court should have ordered [the attorney] to continue his representation of the petitioner." *Wilks,* 627 F.2d at 35. *See also Richardson v. Lucas,* 741 F.2d 753 (5th Cir.1984) (claim of inadequate waiver of Sixth Amendment right to counsel rejected where defendant had sought dismissal of court-appointed attorney; Fifth Circuit emphasized need to find a voluntary waiver).[3]

It is clear from the foregoing that all federal courts construe the Constitution to require a defendant to effectively waive his right to counsel before being granted the right to self-representation. While the practice varies as to the form of warnings and waiver language, there is no question that actions and words sufficient to demonstrate a knowing and intelligent waiver of the right to counsel are deemed essential.

The courts of the Commonwealth of Massachusetts have adopted a position generally similar to that taken by the federal courts, in particular the Ninth Circuit. In Massachusetts, it has long been held that "once the defendant has made a timely and unequivocal request" to proceed pro se, the trial court should conduct some sort of inquiry in order to ascertain the defendant's reasons for asserting the right (so as to be sure the request is voluntary, and not simply the result of a trial court improperly requiring a defendant to proceed with an attorney that is unfit to defend him, *see Commonwealth v. Cavanaugh,* 371 Mass. 46, 353 N.E.2d 732 (1976)), and to make sure that the defendant is aware of the risks of proceeding pro se so that the waiver is knowingly and intelligently made. *Commonwealth v. Chapman,* 8 Mass. App.Ct. 260, 265, 392 N.E.2d 1213, 1217 (1979); *Commonwealth v. Mott,* 2 Mass. App.Ct. 47, 308 N.E.2d 557 (1974).[4]

■ In the present case, the state trial judge—seeking to follow the established rule that the right to proceed pro se entails

---

**3.** Similar cases have arisen in this circuit where, after a defendant was allowed to represent himself at trial, he has claimed deprivation of his right to counsel for lack of an effective waiver. *United States v. Hafen,* 726 F.2d 21, 25 (1st Cir.), *cert. denied,* 466 U.S. 962, 104 S.Ct. 2179, 80 L.Ed.2d 561 (1984); *Fillippini v. Ristaino,* 585 F.2d 1163, 1196 (1st Cir.1978); *Maynard v. Meachum,* 545 F.2d 273 (1st Cir.1976).

In spite of the Supreme Court's requirement that a criminal defendant's waiver of the right to counsel must be voluntary, and must be knowingly and intelligently made, *Johnson v. Zerbst,* 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938), this circuit, unlike some, has not required specific warnings to be given concerning the dangers of self-representation, *see Fillippini,* 585 F.2d at 1166, nor, in our supervisory role, have we required the trial court to

make specific findings of fact regarding the waiver, *Hafen,* 726 F.2d at 25. We have observed, however, that appellate review would be simplified if the trial court provided a short statement of its reasons for finding that a defendant's waiver of counsel was knowing and intelligent. *Hafen,* 726 F.2d at 25. *See also Maynard,* 545 F.2d at 278–79 (remanding to district court for findings of fact as to whether waiver of counsel was knowingly and intelligently made).

**4.** The trial court cited to these state court decisions in its written order, dated October 21, 1982. *See supra.* It was clearly trying to follow the appropriate Massachusetts case law in order to strike a balance between these two conflicting constitutional rights.

an affirmative, knowing and intelligent waiver of the right to counsel—thought it proper to seek an unequivocal, express waiver of the right to counsel as a prerequisite to granting defendant's motion to represent himself. The Massachusetts Supreme Judicial Court approved his approach. This is the approach the Ninth Circuit required in *Meeks v. Craven*, 482 F.2d 465. Given the difficulty that can ensue if a waiver is not fully established, we see nothing wrong in such a requirement.

The right to counsel is, in a sense, the paramount right; if wrongly denied, the defendant is likely to be more seriously injured than if denied his right to proceed pro se. Accordingly, we think that requiring an express waiver of the former right before recognizing the latter is a defensible procedure. Certainly we do not agree with petitioner that as soon as he stated that he would rather proceed pro se, the court should have granted the request without further inquiry. Tuitt contends that a simple statement such as, "I'd rather go pro se than have this court-appointed attorney," is sufficient as a matter of law to require the granting of self-representation. He contends that any further waiver requirement is an unwarranted and impermissible burden on the defendant's constitutional right to represent himself. As our discussion of the case law shows, however, had the trial judge granted the request to proceed pro se without basis in the record from which to demonstrate a knowing and intelligent waiver of the right to counsel, he would have been vulnerable on appeal to the claim that the defendant's Sixth Amendment right to counsel was violated. Even in this circuit, where we eschew formalistic waivers, we have refused to accept a simple request to go pro se as by itself showing that the waiver of counsel was *knowing* and *intelligent*. *Maynard v. Meachum*, 545 F.2d at 279 (while simple request sufficient to find that the required waiver of attorney was voluntary, a remand necessary to find whether, inter alia, the waiver was knowing and intelligent). To be sure,

the trial court could have adopted alternative courses, such as explaining Tuitt's rights fully, making such inquiry of Tuitt as it deemed sufficient and then hoping an appellate court would infer from the record a sufficient waiver. But we do not think the Constitution limits all jurisdictions to just one approach. We see no reason why Massachusetts, to avoid confusion among its courts, may not insist that the right to go pro se be conditioned upon an express and unequivocal waiver of counsel.

We conclude that the state court was entitled to require an express waiver from Tuitt of the right to counsel before allowing Tuitt to proceed pro se.

B. *Whether The Required Waiver Would Have Had The Effect Of Destroying Tuitt's Right To Appeal From The Trial Court's Refusal To Allow Him To Discharge Present Counsel*

It is relatively easy to answer as we have the question whether Tuitt could be required, in the abstract as it were, to waive the right to counsel. It is harder to deal with the argument that the judge's insistence that Tuitt waive the right to counsel may have led Tuitt to believe that he was being required to relinquish, then and there, his objection to the trial court's denial of his motions to discharge Mr. Rubin and for a continuance to secure new counsel. That objection had been argued and lost before the trial court. Hence the only practical reason to want to preserve it was for appellate review. Did the court's insistence that Tuitt waive the right to counsel cause Tuitt to feel he was being asked to surrender his right to appeal from the court's denial of a continuance and its refusal to allow the discharge of Tuitt's present counsel? Or, as the judge seems to have felt, was Tuitt simply "playing games" with the court, hoping, perversely, to hold on to the "right to counsel" while at the same time going forward pro se—a muddle handpainted to secure appellate reversal?[5]

5. It may be surmised from Tuitt's criminal

record and the legal sophistication of his dia-

The simple answer, of course, is we do not know. Neither Tuitt nor his lawyer ever asked the court, as could easily have been done had the point been worrying Tuitt, whether the required waiver was meant to encompass Tuitt's right to appeal from denial of the two motions.

■ The district court found it doubtful that the trial court had placed petitioner in the position of requiring a waiver of his appellate rights before allowing him to proceed pro se.[6] While this is a close issue, we agree with the district court.

When the trial court first denied the motion to substitute counsel, the court told petitioner, "I am going to reserve your rights, your objection to my denying your motion on the record at this time." Later that day the court told petitioner,

It is 4:00 o'clock. I will take motion as far as representing yourself pro se under advisement, I will advise you in the morning whatever the decision. We will impanel a jury tomorrow morning to commence this trial, understand that, Mr. Tuitt?

To which petitioner replied,

I understand, your Honor.

And still, for the record I'd like to say that I am not ready to go forward with this case, it hasn't been prepared by myself or by the Court-appointed attorney and if I were to use the Court-appointed attorney it would just be ineffective assistance of counsel, and *I'm not waiving my right to counsel, but I don't want him, and I know we are ready to go forward with this case.*

On the following day petitioner renewed his motion to dismiss the court-appointed attorney. When the trial court again denied the motion, the following colloquy ensued:

MR. TUITT: I would like to have the record show that I do not want this man to represent me. I do not want a Court-appointed attorney forced upon me against my will. I am able to retain my own counsel. This is not a delaying tactic.

THE COURT: Mr. Tuitt, we've been over that. Please. I have denied your motion. *We are going to proceed with the trial in these cases. It's on the record now.*

The court then asked Tuitt about his desire to proceed pro se. The court asked him to waive his right to an attorney stating,

My understanding of the case law, as I read it, the right to proceed on your own, your own defense of pro se, as we call it, is a qualified right and I will allow you to proceed to try this case on your own behalf without counsel.

I will allow you to proceed in that sense only, only if you waive counsel. *If you do not waive counsel, then you will proceed to the trial of this case with Mr. Rubin.* I give you the option. Whichever way you want to go.

Petitioner refused to waive his right to counsel, and in response the trial court stated, *"If you will not waive counsel for the purpose of this trial,* then I will deny your motion to proceed pro se. The case will proceed with Mr. Rubin being your lawyer."

logue with the judge that he was no stranger to courtroom practice and procedure.

**6.** Petitioner claims that the federal district court could not reach this conclusion because, he claims, the Massachusetts Supreme Judicial Court found, as a factual matter, that petitioner definitely thought he was being required to waive his appellate rights. *See* 28 U.S.C. § 2254(d) (1982) (in habeas appeal to federal court, state court findings of fact are presumed correct); *Sumner v. Mata,* 449 U.S. 539, 546–47, 101 S.Ct. 764, 768–69, 66 L.Ed.2d 722 (1981) (the presumption applies to findings of fact made by a state appellate court). We discover no such

finding of fact. At best, we find that the Massachusetts Supreme Judicial Court's discussion of this point is based upon its assumption, without deciding, that petitioner believed he was being required to waive his appellate rights. *See, e.g., Commonwealth v. Tuitt,* 393 Mass. 801, 473 N.E.2d 1103, 1113 (1985) (O'Connor, J., dissenting) (petitioner refused to waive counsel *"perhaps* believing" that in doing so, he would be waiving his appellate rights). *See also* 28 U.S.C. § 2254(d) (state court finding of fact must be evidenced by "a written finding, written opinion, or other reliable and adequate written indicia").

On the second day of trial petitioner stated to the trial court,

I don't want to be compelled to go forward with this counsel. I do not want to waive any rights to counsel—I wanted to get [my] own attorney. I could afford an attorney at this time. I want to get my own attorney and I'm being denied due process and being denied my Constitutional rights to represent myself, my Sixth Amendment rights, and I asked you also to allow a stay so a single justice of the S.J.C. could hear this, and you wouldn't allow me that. I just want for the record—you know—even though I'm sitting here as co-counsel and conferring with Mr. Rubin. . . .

To which the trial court replied,

Mr. Tuitt, your argument is on the record and my action on the motions speak for it. If there is error there, I'm sure that it will be discovered. If I thought there was error in this, I would take all steps to correct it.

The above quoted statements suggest that Tuitt knew that the court was proceeding to trial immediately, and that his objections were being preserved for appellate review. Therefore, we think he was reasonably on notice that the trial court was not requiring a waiver of his right to contest, on appeal, the denial of the motion to substitute counsel.

The matter could, of course, have been clarified had the trial judge told Tuitt, specifically, that while to proceed pro se he must waive his right to counsel, he would not thereby jeopardize his right to appeal from the court's denial of his motions for substitute counsel. But hindsight is always a great benefit. We think the court was within its rights in insisting that Tuitt waive counsel; and, if there was misunderstanding as to what this encompassed, Tuitt, who had Mr. Rubin by his side, was in as good a position as any to clarify whether the requested waiver would in any way affect his right to dispute, on appeal, the judge's refusal to permit Mr. Rubin to withdraw and to allow time for the engaging of another attorney. We are also influenced by our view that where, as here, a conflict erupts between the right to counsel and the right to proceed pro se, a court should not be criticized for favoring the former right: the consequences of being deprived of counsel are far more serious than of not being allowed to proceed uncounselled. Tuitt was allowed here to act as co-counsel, and the court endeavored at all times to strike a fair and reasonable balance.

IV.

Petitioner attacks the Massachusetts habitual offender provisions, Mass.Gen.Laws ch. 127, § 133B (1984), and ch. 279, § 25 (1984), under which he received a life sentence. He alleges that the statute is unconstitutionally vague because it does not provide a method for calculating when he will be eligible for parole. He also complains that the statute provides no method for including good conduct deductions in the calculation of his parole eligibility date. The Massachusetts Supreme Judicial Court refused to address the issue of petitioner's parole eligibility stating, "The issue of parole is not properly before us, and we do not here suggest that parole is unavailable for one sentenced under the habitual offender statute." *Commonwealth v. Tuitt*, 393 Mass. at 813 n. 13, 473 N.E.2d at 1112 n. 13.

Under Massachusetts law, "every" person sentenced as a habitual offender is eligible for parole when he has served one half of his maximum sentence. Mass.Gen. Laws ch. 127, § 133B. However, this provision which establishes the eligibility for parole for habitual offenders does not specify how one calculates one half of a life sentence. Persons who receive a life sentence under any other section except the habitual offender statute are eligible for parole after serving 15 years. Mass.Gen. Laws ch. 127, § 133A (1984). Petitioner asserts that the statute is unconstitutionally vague because he cannot calculate when he will be eligible for parole since the statute does not establish when one half a life sentence has been served.

Petitioner's argument relies upon the basic principle that "no one may be required

at peril of life, liberty or property to speculate as to the meaning of penal statutes." *Lanzetta v. New Jersey,* 306 U.S. 451, 453, 59 S.Ct. 618, 619, 83 L.Ed. 888 (1939). He asserts that this fundamental tenet of due process applies to statutes governing sentencing as well as substantive criminal proscriptions. *United States v. Batchelder,* 442 U.S. 114, 99 S.Ct. 2198, 60 L.Ed.2d 755 (1979).

We note first that there is no constitutional or inherent right to parole, *Greenholtz v. Nebraska Penal Inmates,* 442 U.S. 1, 7, 99 S.Ct. 2100, 2103, 60 L.Ed.2d 668 (1979), nor does the Constitution guarantee good-time credit for good behavior while incarcerated, *Wolff v. McDonnell,* 418 U.S. 539, 557, 94 S.Ct. 2963, 2974, 41 L.Ed.2d 935 (1974). Moreover, the Massachusetts criminal provisions under which petitioner was convicted clearly define the prohibited conduct (armed robbery) and the authorized punishment (life imprisonment). Since the penal aspects of these statutes clearly define the conduct prohibited and the punishment authorized, we do not find an unconstitutional vagueness merely because of indeterminacy in the state's award of a purely discretionary benefit—parole. Simply because the government's provision of a gratuitous benefit is not precisely delineated does not serve to condemn a statute that clearly defines the proscribed conduct and the authorized penal sanction, since these are the real issues with which the vagueness doctrine is concerned.

Petitioner also claims that his sentence of life imprisonment violates the Eighth Amendment prohibition against "cruel and unusual" punishment. He relies upon *Solem v. Helm,* 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983), wherein the Supreme Court invalidated a life sentence that had been imposed under a habitual offender statute. In *Solem,* the defendant was sentenced to life imprisonment without parole after being convicted of uttering a "no account" check for $100. The defendant had been convicted of several prior felonies which triggered the recidivist statute. These prior felonies were de-

scribed by the Supreme Court as relatively minor, noting that they were nonviolent and that none was a crime against a person. The Court also noted that the last crime which triggered the enhanced sentencing was "one of the most passive felonies" a person can commit and that it involved neither violence nor the threat of violence. *Solem,* 463 U.S. at 296, 103 S.Ct. at 3012.

In the present case, petitioner's predicate crimes were very serious and involved violence or the threat of violence (armed robbery, assault with a dangerous weapon, assault and battery by means of a dangerous weapon). His last crime, which triggered the habitual offender statute, was very serious (armed robbery while masked). Thus the present case is clearly distinguishable from *Solem.*

Moreover, in *Solem,* the recidivist statute in question imposed a severely enhanced sentence without regard to the seriousness of the last crime committed. Under the statutory scheme in *Solem,* if a defendant had been convicted of three prior felonies, upon conviction of the last felony, the applicable sentence was enhanced to a "Class 1" felony, the most serious class of felonies which carries a maximum life sentence. *Solem,* 463 U.S. at 281, 103 S.Ct. at 3005. Therefore, the enhanced sentence bore no relation to the seriousness of the last felony committed and as a result, the defendant was given a life sentence for the relatively minor felony of uttering a no account check.

In contrast, under the Massachusetts habitual offender statute, the enhanced sentence is tied directly to the seriousness of the final crime which triggers the act. A habitual offender is sentenced to "the maximum term provided by law as a penalty for the felony for which he is then to be sentenced." Mass.Gen.Laws ch. 279, § 25. We can discern no proportionality problem with a sentence under the enhanced sentencing scheme which imposes the maximum sentence a defendant could have received for that one felony alone.

Other courts have held that a sentence of life imprisonment for armed robbery by a

repeat offender does not constitute cruel and unusual punishment. *See, e.g., Seritt v. Alabama,* 731 F.2d 728 (11th Cir.) (life sentence without parole under habitual offender statute after conviction of first degree robbery and previous narcotic convictions did not constitute cruel and unusual punishment; court relied upon fact that in at least four other states a repeat offender could have received life for armed robbery), *cert. denied,* 469 U.S. 1062, 105 S.Ct. 545, 83 L.Ed.2d 433 (1984); *State v. McNair,* 687 P.2d 1230, 141 Ariz. 475 (1984) (repeat offender's life sentence for armed robbery not cruel or unusual punishment; court relied upon fact that in at least eight states a defendant could receive a life sentence for *first* armed robbery conviction).

Petitioner asserts that we must find that his life sentence constitutes cruel and unusual punishment because the trial court expressed its opinion that, absent the mandatory sentencing under the habitual offender statute, it would not have sentenced petitioner to life imprisonment. However, as the Supreme Court has stated, reviewing courts must "grant substantial deference to the broad authority that legislatures necessarily possess in determining the types and limits of punishments for crimes." *Solem,* 463 U.S. at 290, 103 S.Ct. at 3009. Therefore, the fact that one trial judge disagrees with his legislature's assessment of the proper punishment for this petitioner's crimes does not require this court to find that the sentence is unconstitutional.

Finally, petitioner claims that the habitual offender statute violates due process because it impermissibly places the burden on the defendant to disprove an element of the crime. The statute requires that whoever has been twice convicted of the predicate felonies, "and does not show that he has been pardoned for either crime on the ground he was innocent, shall upon conviction of a felony be considered an habitual criminal." Mass.Gen.Laws ch. 279, § 25. Petitioner asserts that the requirement that he show that he has been pardoned constitutes an impermissible shifting of the burden of proof.

The Supreme Court has established that the due process clause "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship,* 397 U.S. 358, 364, 90 S.Ct. 1068, 1072, 25 L.Ed.2d 368 (1970). However, the Supreme Court further held in *Patterson v. New York,* 432 U.S. 197, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977), that a state could permissibly place the burden of proving an affirmative defense on the defendant. In *Patterson,* the affirmative defense in question was that of "extreme emotional disturbance" which, if proved, would have reduced the crime of murder to the lesser offense, manslaughter. Recently, the Supreme Court affirmed this principle, holding that a state could permissibly require an accused to prove the affirmative defense of self-defense in a trial for aggravated murder. *Martin v. Ohio,* —— U.S. ——, 107 S.Ct. 1098, 94 L.Ed.2d 267 (1987).

█ In the present case, it is clear that the state must originally prove, beyond a reasonable doubt, each element of the predicate felonies in order to convict the defendant of those prior crimes. Further, the state must prove, beyond a reasonable doubt, each element of the last felony which triggers the application of the habitual offender statute. And finally, the state must prove that the defendant was in fact convicted of the predicate prior felonies. Once the state has proven each of these necessary elements, there is nothing unconstitutional in requiring the defendant to prove the affirmative defense of having been pardoned for one of the prior felonies.

*Affirmed.*