**Joseph WISEMAN, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 01–05–00515–CR.**

Court of Appeals of Texas,
Houston (1st Dist.).

Sept. 28, 2006.

Discretionary Review Refused
March 21, 2007.

Glenn J. Youngblood, Houston, for Appellant.

Charles A. Rosenthal, Jr., District Attorney–Harris County, William J. Delmore III, Assistant District Attorney, Houston, for Appellee.

Panel consists of Justices KEYES, ALCALA, and BLAND.

## OPINION

EVELYN V. KEYES, Justice.

A jury found appellant, Joseph Wiseman, guilty of the felony offense of injury to a child and assessed his punishment at 35 years' confinement. In two points of error, appellant contends that the trial court violated his due process rights under the Constitutions of the United States and Texas by (1) ordering him to be shackled for the duration of his trial and (2) allowing prosecutorial misconduct during closing arguments over appellant's objections.

Because we sustain appellant's first point of error, and reverse and remand for a new trial, we need not consider appellant's contentions regarding prosecutorial misconduct. *See* TEX.R.APP. P. 47.1.

**BACKGROUND**

The complainant, H.W., is appellant's daughter. When H.W. was approximately five months old, appellant was her primary caregiver from the morning until the early evening. Appellant's wife, Ursula Wiseman, worked at a temporary job during the day.

In early November 2003, appellant telephoned Ursula at work and informed her that H.W. had rolled off the couch and fallen to the floor. Appellant stated that H.W. appeared uninjured and Ursula testified that H.W. seemed "fine" when Ursula returned home from work that evening. Ursula's temporary job concluded on Monday, November 10, 2003. She remained home until the subsequent Friday (November 14) when she was away from home between the early morning and early evening, leaving H.W. under the sole care of appellant. When Ursula returned home at approximately 5:30 p.m., H.W. was asleep and Ursula did not sense that anything was wrong with her.

At approximately 4:00 a.m. the following morning, November 15, Ursula awoke to give H.W. her morning bottle. H.W., however, refused the bottle and was "screaming and real fussy." This convinced Ursula that something was wrong with H.W. and she took her by taxicab to Southwest Memorial Hospital ("Southwest"). During the cab ride to Southwest, H.W.'s left hand and arm began moving in a jerking motion. Ursula later learned that these were the visual symptoms of a seizure.

Doctors at Southwest examined H.W., performed a CAT scan, MRI, and various X-rays, and determined that she had sustained a multiple skull fracture to her left side and a linear fracture to the back of her skull. In addition: (1) H.W.'s brain was bleeding and swollen; (2) she had retinal hemorrhaging; and (3) the radius bones in both her arms were fractured. At trial, various doctors testified that: (1) H.W.'s head trauma had been sustained no more than a week prior to her admission to Southwest on November 15 and her arm fractures no more than two weeks prior to her admission; (2) H.W.'s skull fractures were consistent with her skull having been struck against a hard surface, including a wall, table, or floor; and (3) the trauma experienced by H.W. could not have been caused by her fall from the couch.

Appellant, the primary caregiver for H.W. during the time the testifying doctors had stated that H.W.'s injuries occurred, was charged by indictment with the felony of injury to a child. The indictment alleged that appellant intentionally and knowingly caused serious bodily injury to H.W. by striking her with or against an unknown object and by shaking her with his hand. Appellant's case proceeded to a trial by jury. Prior to voir dire, the following exchange occurred between the trial court and appellant's counsel:

> COUNSEL: I need to make one more objection on the record, Judge; and that is Mr.—I just now noticed that Mr. Wiseman was shackled. We're going to be in front of the jury. I assume the Court is going to require that the shackles remain on Mr. Wiseman during the time that we're in front of the jury, am I correct?
>
> TRIAL COURT: That's correct.
>
> COUNSEL: We're going to object to that. I believe by doing so in front of the jury, it denies Mr. Wiseman the presumption of innocence and basically all aspects of due process under the U.S. Constitution and denies equal

protection under the law. It denies him effective assistance of counsel. It restricts his freedom of movement, his ability to communicate with counsel during the voir dire process. I think any movement by Mr. Wiseman may clue the jury into the fact that he's chained, perhaps just because of the noise of the movement. Nonetheless, I also think that a juror who was brought to the bench and looked back at Mr. Wiseman from my vantage point, I'm standing at the bench where a potential juror would be questioned, I'm looking back at Mr. Wiseman, I can see the shackles.

TRIAL COURT: We will take care of that. We will get a box to place in front of Mr. Wiseman's legs. We've encountered that request before and so that's easy, to put a box in front of his legs, make it impossible for any juror at the bench to see that Mr. Wiseman is shackled. The objection to Mr. Wiseman being shackled is denied. He will remain shackled throughout the entire trial.

COUNSEL: The other request is to have anybody who can articulate on the record any specific reason for requiring that Mr. Wiseman be shackled in front of the jury.

TRIAL COURT: Mr. Wiseman is in custody charged with a first-degree felony. He is not eligible for probation, and the State is recommending 20 years in prison. It is a very serious accusation, if the defendant is found guilty, Mr. Wiseman is facing a substantial period of time in prison, and for that reason, the court is going to order him shackled during trial.

COUNSEL: Thank you judge.

Appellant thus remained shackled throughout his trial-from voir dire through the punishment phase. On the fourth day of the trial, shortly before appellant testified in his own defense, the bailiff, outside the presence of the jury, advised appellant that "It would be my suggestion that you take your right foot and put it slightly forward of your left foot. That way it's concealing those chains. Much better." It appears from the record that the bailiff's statement was made in reference to the position of appellant's legs while appellant sat in the witness chair, although this is not entirely clear. The jury found appellant guilty and this appeal followed.

## DISCUSSION

In two points of error, appellant contends that the trial court violated his due process rights under the Constitutions of the United States and Texas by (1) ordering him to be shackled for the duration of the trial and (2) allowing prosecutorial misconduct during closing arguments over appellant's objections.

### Did the Shackling of Appellant Violate his Right to Due Process?

■ In his first point of error, appellant contends that the trial court violated his due process rights under the United States and Texas Constitutions by requiring him to wear shackles throughout his trial. Because appellant did not object at trial that his shackling violated the Texas Constitution, he has waived his right to appeal on that ground. *See* Tex.R.App. P. 33.1(a). We therefore consider appellant's claims in the context of fundamental due process rights guaranteed by the United States Constitution.

■ The Fourteenth Amendment guarantees criminal defendants the right to a fair trial. *See Estelle v. Williams*, 425 U.S. 501, 503, 96 S.Ct. 1691, 1692, 48 L.Ed.2d 126 (1976). Three constituent elements of this guarantee are directly implicated by the shackling of a criminal defen-

dant during trial proceedings. *See Deck v. Missouri*, 544 U.S. 622, 630, 125 S.Ct. 2007, 2013, 161 L.Ed.2d 953 (2005). First, "the criminal process presumes that the defendant is innocent until proven guilty." *Id.* A defendant who is visibly shackled does not have the benefit of this bedrock presumption and thus his right to a fair trial is fundamentally compromised. *Id.* Second, "the Constitution, in order to help the accused secure a meaningful defense, provides him with a right to counsel." *Id.* at 631, 125 S.Ct. at 2013. The use of shackles may undermine this right by impeding a defendant's ability to effectively communicate with his attorney. *Id.* Third, "the routine use of shackles in the presence of juries" compromises "[t]he courtroom's formal dignity, which includes the respectful treatment of defendants, reflects the importance of the matter at issue, guilt or innocence, and the gravity with which Americans consider any deprivation of an individual's liberty through criminal punishment." *Id.*

For the reasons stated above, "[t]he law has long forbidden the use of visible shackles during the guilt phase" of a criminal defendant's trial. *Id.* at 626, 125 S.Ct. at 2010. Despite this general rule, courts recognize that it may be necessary for certain defendants to be restrained in exceptional circumstances. *See id.* at 629, 125 S.Ct. at 2012. Such circumstances may arise, for instance, when a defendant has demonstrated a propensity to escape or has threatened or assaulted courtroom personnel, thereby implicating an essential state interest, namely, courtroom security. *See id.* at 632, 125 S.Ct. at 2014; *Long v. State*, 823 S.W.2d 259, 282 (Tex.Crim.App.1991). Prior to the use of shackles, however, a trial court must make a specific finding that they are necessary for reasons particular to a given case. *See Deck*, 544 U.S. at 627, 125 S.Ct. at 2011

("[T]rial courts may not shackle defendants routinely, but only if there is a particular reason to do so.").

The employment of restraints, such as shackles, cannot be justified based on a general appeal to the need for courtroom security or simple reference to the severity of the charged offense. *See Long*, 823 S.W.2d at 283. Rather, a trial court must state with particularity its reasons for shackling a defendant. *Id.* Such determinations are reviewed under an abuse of discretion standard. *Id.* at 282. While mindful of preserving a trial court's discretion to determine whether restraints are necessary in a given case, "a decision to apply leg shackles to [a] defendant 'must be subjected to close judicial scrutiny to determine if there was an essential state interest furthered by compelling a defendant to wear shackles.' " *United States v. Durham*, 287 F.3d 1297, 1304 (11th Cir. 2002) (quoting *Elledge v. Dugger*, 823 F.2d 1439, 1451 (11th Cir.1987) (per curiam), *withdrawn in part*, 833 F.2d 250 (11th Cir.1987)).

Here, the reasons offered by the trial court for shackling appellant amount to mere generalities. According to the court, appellant was shackled because he (1) was not eligible for probation, (2) was charged with a serious crime, and (3) was facing a considerable amount of time in prison, if convicted. Such sweeping explanations for shackling are prohibited, as they reflect not a case-by-case exercise of discretion, but rather the application of a general rule that fails to account for circumstances particular to a given defendant. *See Deck*, 544 U.S. at 634, 125 S.Ct. at 2015; *Long*, 823 S.W.2d at 283. As no findings were made that appellant was, *inter alia*, an escape risk or a threat to courtroom security, we conclude that the trial court abused its discretion in ordering

appellant to remain shackled for the duration of his trial.

▮▮▮▮ Having concluded that the trial court abused its discretion by requiring appellant to be tried in shackles, we must now determine whether appellant's shackling constituted harmful error.[1] *See* TEX. R.APP. P. 44.2(a). Because the use of shackles implicates constitutional rights,[2] we must "reverse a judgment of conviction or punishment unless [we] determine[ ] beyond a reasonable doubt that the [shackling] did not contribute to the conviction or punishment." *See id.* Shackling has been held to be harmful error when the shackles are detectable to the jurors or when the use of restraints unduly restricts a defendant's ability to communicate with counsel. *See Deck*, 544 U.S. at 630–31, 125 S.Ct. at 2013.

The State contends appellant was not harmed because there is no evidence in the record indicating that his shackles interfered with his ability to communicate with counsel or were observable to the jury. The test, however, is whether we can conclude beyond a reasonable doubt from reviewing the record that the shackles did not contribute to appellant's conviction or punishment. Here, we cannot draw that conclusion. At voir dire, appellant's counsel indicated to the trial court on the record that "any movement by Mr. Wiseman may clue the jury into the fact that he's chained, perhaps just because of the noise of the movement." Neither the court nor the State responded to this contention. Appellant's counsel also stated, "I also think that a juror who was brought to the

bench and looked back at Mr. Wiseman from my vantage point" would see the shackles. Although the court indicated that a box would be placed in front of appellant's legs to make it impossible for any juror at the bench to see that he was shackled, shortly before appellant testified on his own behalf, the bailiff, outside the presence of the jury, informed appellant that he should place his right foot slightly in front of his left foot in order to conceal his leg chains. It appears that the bailiff's remark referred to the position of appellant's legs while appellant was seated in the witness chair, not at the defense table. On its face, the bailiff's statement indicates that appellant's shackles were exposed. Because we are unable to conclude from the record that appellant's shackles were not heard or seen by the jurors and did not constrain appellant's ability to communicate with counsel, thus affecting the jury's assessment, we are unable to determine beyond a reasonable doubt that the trial court's error in shackling appellant did not contribute to his conviction or punishment. *See* TEX.R.APP. P. 44.2(a).

▮▮▮▮ Two additional factors lend support to our decision to sustain appellant's first point of error. First, as the United States Supreme Court has noted, the use of shackles undermines the dignity of judicial proceedings. *See Deck*, 544 U.S. at 631, 125 S.Ct. at 2013. We recognize that courtroom security is a matter of utmost importance and that shackling may be necessary in certain cases. However, shackling a defendant without a demonstrated need compromises the formal dignity of a judicial proceeding and leads to

---

1. Appellate review of claims by an appellant that he was prejudiced at trial as a result of shackling have been held to require harmless error review under Texas Rule of Appellate Procedure 44.2(a) unless the record demonstrates that the shackling at issue resulted in appellant being totally deprived of his ability to communicate with counsel during his trial. *See Davis v. State*, 195 S.W.3d 311, 316 (Tex. App.-Houston [14th Dist.] 2006, no pet. h.).

2. *See Deck*, 544 U.S. at 630–31, 125 S.Ct. at 2013.

harmful collateral effects. *Id.* Such effects chiefly include curtailing a defendant's ability to communicate freely with counsel because of the physical limitations imposed by shackles or simply because of the distraction and embarrassment they cause the defendant. *See id.; United States v. Durham*, 287 F.3d 1297, 1304 (11th Cir. 2002) ("Even if the [shackles] placed upon the defendant are not visible to the jury, they still may . . . confuse the defendant, impair his ability to confer with counsel, and significantly affect the trial strategy he chooses to follow.").

Second, harmless error review under Texas Rule of Appellate Procedure 44.2(a) may take into account the source of the error and "whether declaring it harmless would encourage its repetition with impunity." *Davis*, 195 S.W.3d at 317; *see also Harris v. State*, 790 S.W.2d 568, 587 (Tex.Crim.App.1989). Here, the error originated from the trial court's sua sponte order, and the trial court's reasons for shackling appellant are insufficient as a matter of law. *See Garcia v. State*, 919 S.W.2d 370, 381 (Tex.Crim.App.1994). Appellant's complaint is the third time that this complaint has been asserted against the same trial court in less than three months after an appellate court has found that the same trial court abused its discretion in ordering a defendant to be shackled for trial. *See Davis*, 195 S.W.3d at 316; *Grayson v. State*, 192 S.W.3d 790, 792 (Tex.App.-Houston [1st Dist.] 2006, no pet. h.). In light of this history, "[w]e fear that declaring this error harmless may encourage repetition of this blatantly unconstitutional action." *See Davis*, 195 S.W.3d at 316 (citing *Kelly v. State*, 903 S.W.2d 809, 812 (Tex.App.-Dallas 1995, pet ref'd) (finding harm based solely on need to prevent

repetition of error that was committed at least two other times in the past year)).

For a defendant to be shackled in accordance with the United States Constitution, the United States Supreme Court and the Texas Rules of Appellate Procedure provide that (1) the trial court must make a defendant-specific finding that a state interest justifies shackling; (2) every reasonable step must be taken to make the shackles invisible to the jurors; and (3) a shackled defendant's conviction must be reversed unless we determine beyond a reasonable doubt that his shackling constituted harmless error. *See* Tex.R.App. P. 44.2(a). Here, none of the criteria for shackling a defendant were met. Indeed, the trial court's repeated use of shackling during the guilt-innocence phase appears to reverse these guidelines, such that a defendant is shackled regardless of any individualized factors and it is incumbent upon the defendant to demonstrate harm. In other words, the trial court's approach exclusively emphasizes the harm analysis at the expense of the fact that United States Supreme Court precedent prohibits shackling altogether, absent a specific finding that shackling is necessary. We conclude that the trial court's repeated practice of shackling defendants is constitutional error.[3]

In sum, we hold that (1) the trial court abused its discretion in shackling appellant for the duration of his trial and (2) harm emanated from this abuse of discretion. Therefore, we sustain appellant's first point of error.

## CONCLUSION

We sustain appellant's first point of error and reverse and remand this case for

---

3. We note that shackling may be harmless error in certain cases. *See Grayson*, 192 S.W.3d at 793 (finding that trial court abused its discretion in shackling defendant but that error was harmless).

further proceedings. Consequently, we need not consider appellant's second point of error. *See* TEX.R.APP. P. 47.1.