In The



Court of Appeals



Ninth District of Texas at Beaumont



____________________



NO. 09-06-172 CR


____________________



KIHEEM GRANT, Appellant



V.



THE STATE OF TEXAS, Appellee






On Appeal from the 252nd District Court


Jefferson County, Texas


Trial Cause No. 90653






O P I N I O N


 Kiheem Grant was convicted of murder. The jury assessed punishment at
incarceration for life and a fine in the amount of $10,000.

 Grant raises six issues in this appeal. In his first two issues, Grant argues the trial
court did not properly warn him of the dangers of self-representation, and through his
deficient self-representation, he contributed to his own conviction. In issue three, he
complains of the shackles used to restrain him during the trial. In issue four, he raises error
in the procedure followed for his opening statement. In issues five and six, he says the trial
court erred in not giving him more time to review written statements of witnesses before
cross-examination. Finding no reversible error, we affirm the trial court's judgment. 

The Right to Self-Representation


 The first two issues Grant presents are:

 1. The trial court failed to admonish appellant sufficiently concerning the
dangers of self-representation.


 2. Appellant was denied his right to counsel.


The rights to assistance of counsel and to self-representation are protected by the Sixth
Amendment of the United States Constitution, made applicable to the States by the
Fourteenth Amendment. See Faretta v. California, 422 U.S. 806, 818-21, 95 S.Ct. 2525, 45
L.Ed.2d 562 (1975). See also United States v. Cronic, 466 U.S. 648, 659, 104 S.Ct. 2039,
80 L.Ed.2d 657 (1984); McKaskle v. Wiggins, 465 U.S. 168, 177 n.8, 104 S.Ct. 944, 79
L.Ed.2d 122 (1984). "The Sixth and Fourteenth Amendments of our Constitution guarantee
that a person brought to trial in any state or federal court must be afforded the right to the
assistance of counsel before he can be validly convicted and punished by imprisonment."
Faretta, 422 U.S. at 807; see also Argersinger v. Hamlin, 407 U.S. 25, 37-38, 92 S.Ct. 2006,
32 L.Ed.2d 530 (1972); Gideon v. Wainwright, 372 U.S. 335, 343-345, 83 S.Ct. 792, 9
L.Ed.2d 799 (1963). In Faretta, the Supreme Court held that the Sixth Amendment not only
affords an accused facing an adversarial criminal proceeding the right to a defense, but the
Sixth Amendment also "grants to the accused personally the right to make his defense." 
Faretta, 422 U.S. at 819. As the Court noted:

 Although not stated in the Amendment in so many words, the right to self-representation -- to make one's own defense personally -- is thus necessarily
implied by the structure of the Amendment. The right to defend is given
directly to the accused; for it is he who suffers the consequences if the defense
fails. 


Id. at 819-20 (footnote omitted). The Court explained that it is for the defendant personally
to decide whether assistance of counsel in his particular case is to his advantage, and his
choice must be honored out of "'that respect for the individual which is the lifeblood of the
law[,]'" even if his choice may ultimately be to his own detriment. Id. at 834 (quoting
Illinois v. Allen, 397 U.S. 337, 350-51, 90 S.Ct. 1057, 25 L.Ed.2d 353 (1970) (Brennan, J.,
concurring)). It has been observed that the two constitutional rights -- to assistance of
counsel and to self-representation -- are "mutually exclusive," and their "clash" can create
difficult situations for trial courts. See Tuitt v. Fair, 822 F.2d 166, 174 (1st Cir. 1987). 

 Immediately upon opening court in this case, and outside the presence of the venire
panel, the following took place: 

 THE COURT: This is Cause No. 90653, the State of Texas vs. Kiheem
Grant. Are you Mr. Grant?


 THE DEFENDANT: Yes, I am. 


 THE COURT: Okay. Mr. Grant, it's been brought to my attention that
maybe you want to represent yourself in this case?


 THE DEFENDANT: Yeah, yes, sir.


 THE COURT: Are you sure about that?


 THE DEFENDANT: Yes, sir.


 THE COURT: You understand that you have an absolute right if you
can't afford an attorney that I will appoint one. In fact, I've appointed a board
certified attorney by the name of Doug Barlow to represent you. And Mr.
Barlow has been working on your case and, from what I understand, is ready
to go to trial on your behalf today. But you have an absolute right to represent
yourself if that's what you chose to do.


 THE DEFENDANT: I want to represent myself.


 THE COURT: Do you have any questions about the pitfalls, about how
it's not in your best interest for you to represent yourself? Do you have any
questions about that?


 THE DEFENDANT: No.


 THE COURT: I'm gonna let you represent yourself. Mr. Barlow,
you're gonna be standby counsel. And we're ready to proceed.


Grant represented himself through the trial. Appointed counsel and another attorney were
present at trial to assist Grant as standby counsel. Appointed counsel represents Grant in this
appeal. Arguing his first two appellate issues together, Grant contends the waiver of his right
to assistance of trial counsel and the assertion of his right to self-representation are invalid
because the inquiry conducted by the trial court was deficient. 

 A decision to represent oneself must be made knowingly, intelligently, and
voluntarily. Faretta, 422 U.S. at 835 (citing Von Moltke v. Gillies, 332 U.S. 708, 723-24, 68
S.Ct. 316, 92 L.Ed. 309 (1948); Adams v. United States ex rel. McCann, 317 U.S. 269, 279,
63 S.Ct. 236, 87 L.Ed. 268 (1942); Johnson v. Zerbst, 304 U.S. 458, 464-65, 58 S.Ct. 1019,
82 L.Ed. 1461 (1938)). In Godinez v. Moran, 509 U.S. 389, 113 S.Ct. 2680, 125 L.Ed.2d
321 (1993), the Supreme Court contrasted a "knowing and voluntary" inquiry from a
competency inquiry:

 The focus of a competency inquiry is the defendant's mental capacity; the
question is whether he has the ability to understand the proceedings. See
Drope v. Missouri, [420 U.S. 162, 171, 95 S.Ct. 896, 43 L.Ed.2d 103 (1975)]
(defendant is incompetent if he "lacks the capacity to understand the nature
and object of the proceedings against him") (emphasis added). The purpose of
the "knowing and voluntary" inquiry, by contrast, is to determine whether the
defendant actually does understand the significance and consequences of a
particular decision and whether the decision is uncoerced. See Faretta v.
California, [422 U.S. at 835] (defendant waiving counsel must be "made
aware of the dangers and disadvantages of self-representation, so that the
record will establish that 'he knows what he is doing and his choice is made
with eyes open'") (quoting Adams v. United States ex rel. McCann, [317 U.S.
269, 279, 87 L.Ed. 268, 63 S.Ct. 236 (1942)).] 


Godinez, 509 U.S. at 401 n.12 (emphasis in original); accord Moore v. State, 999 S.W.2d
385, 396 n.5 (Tex. Crim. App. 1999). Quoting Chapman v. United States, 553 F.2d 886, 892
(5th Cir. 1977), the First Circuit in Tuitt explained:

 The election to defend pro se entails the waiver of the right to be represented
by counsel. Hence the right of self-representation is conditioned on the
"knowing and intelligent" relinquishment of the right to counsel. . . . Lest
there be a case in which a defendant clearly asserts the right to defend pro se
(so that the denial of the right would be error) without clearly waiving the right
to counsel (so that there remains some question whether the waiver was
knowing and intelligent), a trial judge should engage in a dialogue with such
a defendant, explaining to him the consequences of defending pro se.


Tuitt, 822 F.2d at 174. The Supreme Court has not prescribed any "formula" or "script" to
be read to a defendant who wants to forego counsel and represent himself; "[t]he information
a defendant must possess in order to make an intelligent election . . . will depend on a range
of case-specific factors, including the defendant's education or sophistication, the complex
or easily grasped nature of the charge, and the stage of the proceeding." Iowa v. Tovar, 541
U.S. 77, 88, 124 S.Ct. 1379, 158 L.Ed.2d 209 (2004) (citing Zerbst, 304 U.S. at 464). (1) 

 The Texas Court of Criminal Appeals has indicated that a trial court need not
admonish a defendant on the dangers of one form of hybrid representation, when he is "fully
represented by counsel" although he "partially represented himself[.]" See Maddox v. State,
613 S.W.2d 275, 286 (Tex. Crim. App. 1981) (op. on reh'g) (quoting Phillips v. State, 604
SW.2d 904, 908 (Tex. Crim. App. 1979)); see also Houston v. State, 201 S.W.3d 212, 219-20
(Tex. App.--Houston [14th Dist.] 2006, no pet.) (hybrid representation). Some Texas courts
of appeals have suggested this holding may apply to situations where the defendant's attorney
remains in the case as standby counsel in the event the defendant wants to utilize the
attorney's services. (2) Standby counsel is one consideration, but in our view Faretta
admonishments should be given regardless of the appointment of standby counsel. See
McKaskle, 465 U.S. at 176-88 (the role of standby counsel); see also United States v. Davis,
269 F.3d 514, 519-20 (5th Cir. 2001) (Standby assistance of counsel does not satisfy the right
to counsel.). 

 Although we do not regard appointment of standby counsel as relieving the trial court
of the responsibility to admonish a defendant of the dangers of self-representation, the
admonishment itself is not the ultimate issue before this Court. The State cannot force a
defendant to have a lawyer. See Faretta, 422 U.S. at 820-21, 834. A defendant has a
constitutional right to represent himself. Id., 422 U.S. at 819-20. Grant made his choice to
represent himself on the record. The ultimate issue this Court must determine is whether,
under the particular facts and circumstances of this case, Grant made his decision voluntarily,
knowingly, and intelligently. See id. at 835. 

 Courts look at the totality of the particular facts and circumstances of a case in
deciding whether the defendant's decision was knowing, intelligent, and voluntary. See
Tovar, 541 U.S. at 92. The totality of the circumstances may include the defendant's
education or sophistication, the complex or simple nature of the charge, and the stage of the
proceeding. See id. at 88. Other considerations include whether the defendant was
represented by counsel before trial, whether standby counsel was appointed, and whether the
defendant had prior experience with the criminal justice system. See, e.g., United States v.
Kimball, 291 F.3d 726, 730 (11th Cir. 2002); Fitzpatrick v. Wainwright, 800 F.2d 1057,
1065-67 (11th Cir. 1986). 

 In United States v. Arlt, 41 F.3d 516 (9th Cir. 1994), the Court considered, along with
the trial court's extensive discussion of the dangers of self-representation, the fact that the
defendant's lawyers had advised him concerning his decision to represent himself. Id. at 521.
"Although the practice of issuing specific warnings to defendants who wish to proceed pro
se is a good way -- perhaps the best way -- to insure that the requirements of Faretta are met,
it is not the only way." United States v. Hafen, 726 F.2d 21, 25-26 (1st Cir. 1984) (noting
additionally that counsel who had also represented appellant before trial, and who was in a
better position than the trial court to assess appellant's mental state, "made no objection to
the validity of appellant's decision to proceed pro se."). In Dallio v. Spitzer, 343 F.3d 553,
564 (2nd Cir. 2003), the Court explained that "neither Faretta's holding nor its dictum
clearly establishes that explicit warnings about the dangers and disadvantages of self-representation are a minimum constitutional prerequisite to every valid waiver of the right
to counsel[.]" The Seventh Circuit has noted that all a judge can and need do is "ensure that
the defendant knows his rights and avoids hasty decisions." United States v. Oreye, 263 F.3d
669, 672 (7th Cir. 2001). "If the judge exaggerates either the advantages of being
represented or the disadvantages of self-representation, he will be accused of having put his
thumb on the scale and prevented the defendant from making an informed choice." Id.
(citation omitted). (3) 

 Grant was fully represented by appointed counsel at the time he made the decision to
represent himself. Counsel's job, while he remained appointed counsel, included consulting
with Grant on important decisions. See Strickland v. Washington, 466 U.S. 668, 688, 104
S.Ct. 2052, 80 L.Ed.2d 674 (1984). Presumably, the consultation would include warning
Grant of the dangers inherent in invoking his right of self-representation. The court-appointed attorney, representing Grant in court when he announced his decision to represent
himself in the trial, was ready to try the case. That counsel, with the assistance of another,
thereafter served as standby counsel during trial, conferred with Grant during the trial, and
is now Grant's appointed appellate counsel. 

 Grant's invocation of his right to self-representation was clear and unequivocal. This
was not Grant's first experience with the criminal justice system. See generally Kimball, 291
F.3d at 730 (defendant's prior experience with criminal justice system). (4) His appointed
counsel made no objection to the validity of Grant's decision to represent himself during the
trial. See Hafen, 726 F.2d at 26. 

 Grant makes no argument on appeal that counsel was ineffective when Grant invoked
his right to self-representation. He makes no claim the advice or representation counsel gave
his client at any time before or after trial was somehow inadequate. Courts generally
presume adequate representation by counsel. Thompson v. State, 9 S.W.3d 808, 813 (Tex.
Crim. App. 1999) (citing Strickland, 466 U.S. at 689). 

 There is no indication of a conflict between Grant and his appointed counsel. He did
not request a change in counsel. The record reflects that Grant consulted with standby
counsel during the trial. He makes no complaints about those consultations. After the jury
was selected, Grant asked the trial court "for a ruling on the motions that my co-counsel
filed, Barlow," motions filed before trial. 

 No effort was made to persuade the trial court that Grant's decision was uninformed
or involuntary. No motion for new trial was filed. The same appointed counsel now
represents Grant in this appeal. Considering the totality of the particular facts and
circumstances in this case, we conclude Grant's clear and unequivocal exercise of his
constitutional right was an informed and voluntary decision. Issues one and two are
overruled.

The Shackles


 In issue three, Grant argues the trial court erred in having him shackled during trial. 
Grant specifically requested that he not be shackled. Immediately after Grant's request, the
Court responded as follows:

 THE COURT: Would you put the leg irons on, Mr. [Prosecutor], please. No,
here's the deal. Your hands will be free, okay? But the shock belt will be on;
and as far as the chain on your feet, that's gonna be there, too.


 GRANT: I'm gonna be restrained to the sitting position.


 THE COURT: No, sir, you're gonna be able to stand. That's what I've been
working on. I'm gonna see to it that you're gonna be able to stand up. I've got
a skirt around that table where nobody can see any of that.


 The Defendant: Standing stationary, though? 

Efforts must be made to ensure the jury does not view the defendant in shackles; otherwise,
a defendant's presumption of innocence is seriously infringed. Long v. State, 823 S.W.2d
259, 282 (Tex. Crim. App. 1991). Shackling without reason has constitutional implications. 
See Ziolkowski v. State, 223 S.W.3d 640, 644 (Tex. App.--Texarkana 2007, pet. ref'd); see
also Tex. R. App. P. 44.2(a). Shackling a defendant at trial is rarely called for, and in that
event, the record must detail the grounds for the action. See Cooks v. State, 844 S.W.2d 697,
722 (Tex. Crim. App. 1992) (citing Long, 823 S.W.2d at 282; Marquez v. State, 725 S.W.2d
217, 228 (Tex. Crim. App. 1987)). In responding to Grant's request, the trial court did not
set out reasons in the record for shackling Grant. At a later point, the record does reveal
Grant had assaulted a witness in the courtroom during an earlier criminal trial.

 Courts have held shackling to be harmful error when the shackles are detectable to the
jurors or when the use of restraints unduly restricts a defendant's ability to communicate with
counsel. Deck v. Missouri, 544 U.S. 622, 630-31, 125 S.Ct. 2007, 161 L.Ed.2d 953 (2005).
The record reflects the trial judge took specific measures to prevent the jury from viewing
Grant in shackles and did not put him in handcuffs. The trial court noted that Grant would
be able to stand, as well as sit, and the trial judge ordered a skirt be put around the table so
that "nobody can see any of that."

 Grant relies on Wiseman v. State, 223 S.W.3d 45 (Tex. App.--Houston [1st Dist.]
2006, pet. ref'd). The instant case is distinguishable, because the record in Wiseman
indicated Wiseman's shackles were visible. Id. at 51. The Court stated it could not
determine that the jury did not hear or see the shackles and could not conclude that the error
in shackling Wiseman did not contribute to his conviction or punishment. Id. Grant does not
direct us to any point in the record reflecting the visibility of Grant's shackles to the jury, 
and we find nothing to indicate this occurred. (5) Grant does not argue the shackling interfered
with his ability to communicate with stand-by counsel. The record does not reflect the jury
saw the shackles. See Canales v. State, 98 S.W.3d 690, 698 (Tex. Crim. App. 2003) (citing
Cooks v. State, 844 S.W.2d 697, 722-23 (Tex. Crim. App. 1992)). 

 Grant also argues, in effect, that the shackles were unnecessary because the trial judge
agreed that Grant would not present any problem during the trial. Grant's literal
interpretation of the trial judge's remark is misplaced. The trial judge agreed Grant "would
not be a problem" at trial because shackles and a stun belt restrained Grant. Grant also
asserts the trial judge acknowledged Grant's self-representation would likely reveal the
shackling to the jury. What the trial judge actually told Grant, out of the presence of the jury,
was that Grant was in control of whether the jury learned of the restraints placed upon him. 
 Grant contends the shackles interfered with his self-representation, because he could
not hand a statement, purportedly from the victim's mother, to one of the testifying officers
during his cross-examination of the officer. The prosecutor objected to allowing Grant,
without any predicate, to question the officer concerning a statement made by someone else. 
The trial court sustained that objection. Grant does not challenge that ruling. There is no
indication the trial court's refusal to allow the witness to read the statement or to be handed
the statement had anything to do with Grant and the shackles. We overrule issue three.

The Opening Statement


 In issue four, Grant argues the trial court violated article 36.01 of the Texas Code of
Criminal Procedure by forcing him to make his opening statement immediately following the
State's opening statement. See Tex. Code Crim. Proc. Ann. Art. 36.01 (Vernon 2007). The
following exchange occurred immediately following the prosecutor's opening statement. 

 THE COURT: Mr. Grant, do you want to make a statement at this time?

 GRANT: I'll wait till right before I start presenting my witnesses.

 THE COURT: Okay. You can make it now or don't make one. Take your
pick.


Article 36.01(a) sets out the order in which the trial shall proceed. A defendant is to make
his opening statement -- explaining the "nature of the defenses relied upon and the facts
expected to be proved in their support" -- at the conclusion of the State's evidence. See Tex.
Code Crim. Proc. Ann. art. 36.01 (Vernon 2007). Article 36.01(b) permits a different
order: the defendant may choose to make his opening statement immediately after the State's
opening statement, but the statute does not require him to do so. See Tex. Code Crim. Proc.
Ann. art. 36.01(b) (Vernon 2007); see Robles v. State, 104 S.W.3d 649, 652 (Tex. App.--Houston [1st Dist.] 2003, no pet.). By requiring Grant to present his opening statement
immediately after the State's opening statement, the trial court did not follow article 36.01. 
See,e.g., Abney v. State, 1 S.W.3d 271, 274-75 (Tex. App.--Houston [14th Dist.] 1999, pet.
ref'd).

 We review a statutory violation under the standard in Rule 44.2(b) of the Texas Rules
of Appellate Procedure, and must determine whether a defendant's substantial right is
adversely affected. See Tex. R. App. P. 44.2(b). A substantial right is affected when the trial
court's error had a substantial effect or influence in determining the jury's verdict. See King
v. State, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997). 

 The trial court did not deny Grant the right to present an opening statement. Grant
gave his opening statement, albeit at a time different from that to which he was entitled. 
Grant does not explain, nor can we tell from the record, how his statement would have been
different if he had been allowed to make it at the opening of his evidence, or how the State's
presentation of evidence would have resulted in his making a different opening statement
than he made. Based on our review of the record, we cannot say that the trial court's error
had a substantial effect or influence on the jury's verdict. Under the circumstances, we do
not find the error requires a reversal of the judgment. See Abney, 1 S.W.3d at 274-75. Issue
four is overruled. 

The Recess


 In issues five and six, Grant asserts the trial court erred in refusing to afford him
sufficient time to review the prior written statements of two of the State's witnesses. Grant
does not cite to statements in the record. See Roberts v. State, 220 S.W.3d 521, 526-27 (Tex.
Crim. App. 2007)(procedural waiver). 

 Rule 615 of the Texas Rules of Evidence authorizes the trial court to order the
production, after a witness has testified, of the witness's written statement relating to the
matter testified. See Tex. R. Evid. 615 (formerly Tex. R. Crim. Evid. 614). Section (d) of
the rule provides as follows:

 (d) Recess for Examination of Statement.

 Upon delivery of the statement to the moving party, the court, upon application
of that party, shall recess proceedings in the trial for a reasonable examination
of such statement and for preparation for its use in the trial. 


Tex. R. Evid. 615(d). Immediately prior to Grant's cross-examination of one witness, Grant
asked the trial judge for a brief recess to look over her statement. The trial judge allowed
Grant a few minutes for that purpose. Grant objected to the trial court's not recessing the
trial for his review of the statement. Later, prior to the cross-examination of an officer, Grant
asked the trial court for time to review the officer's seventeen-page offense report. The trial
court gave Grant a recess for that purpose. When Grant asserted the time was inadequate,
the trial court informed Grant that the twelve-minute recess was sufficient. Grant stated the
length of the recess was five minutes.

 Review of the time allotted by the trial court under Rule 615(d) is under an abuse of
discretion standard. See Camacho v. State, 864 S.W.2d 524, 531 (Tex. Crim. App. 1993). 
The record reveals the trial judge gave Grant time to review both documents. Grant then
cross-examined each witness. On this record, we do not find an abuse of discretion in the
trial court's management of the time allotted for Grant's review of either document. See
generally Camacho, 864 S.W.2d at 531; see also Tutt v. State, 940 S.W.2d 114, 122 (Tex.
App.--Tyler 1996, pet. ref'd). Issues five and six are overruled.

 The judgment of the trial court is affirmed.

 

 AFFIRMED.


 __________________________________

 DAVID GAULTNEY

 Justice


Submitted on February 28, 2007

Opinion Delivered October 24, 2007

Publish


Before Gaultney, Kreger and Horton, JJ.
1. Although there is no standardized Faretta litany, a number of federal circuits refer
to the Benchbook for U.S. District Court Judges, published by the Federal Judicial Center. 
The benchbook contains suggested questions and comments for use by a trial court on
conveying the pitfalls and disadvantages likely to be suffered by a pro se defendant when a
defendant insists upon self-representation. See United States v. Jones, 452 F.3d 223, 229 n.4
(3rd Cir. 2006); United States v. Davis, 269 F.3d 514, 519 n.12 (5th Cir. 2001). "[A] failure
to make a proper inquiry of a defendant who asks to represent himself, by itself, is not
necessarily reversible error." United States v. Berkowitz, 927 F.2d 1376, 1384 (7th Cir.
1991). But see also United States v. Virgil, 444 F.3d 447, 457 n.11 (5th Cir. 2006), cert.
denied, 127 S.Ct. 365, 166 L.Ed.2d 138, 75 U.S.L.W. 3169 (2006) ("We do not hold,
however, that a defective waiver colloquy, as distinguished from a defective waiver, can
never be subject to harmless error analysis.").
2. Walker v. State, 962 S.W.2d 124, 126-27 (Tex. App.--Houston [1st Dist.] 1997, pet.
ref'd); Robertson v. State, 934 S.W.2d 861, 865-66 (Tex. App.--Houston [14th Dist.] 1996,
no pet.); see also Jordan v. State, No. 08-05-00286-CR, 2007 Tex. App. Lexis 4118, at
**13-14 (Tex. App.--El Paso 2007, no pet. h.) (not designated for publication); Jones v.
State, No. 14-04-00950-CR, 2005 Tex. App. Lexis 8844, at **2-3 (Tex. App.--Houston [14th
Dist.] 2005, no pet.) (not designated for publication); Robinson v. State, No. 05-04-00235-CR, 2005 Tex. App. Lexis 5595, at **5-6 (Tex. App.--Dallas 2005, no pet.) (not designated
for publication); Anderson v. State, 2-02-060-CR, 2003 Tex. App. Lexis 4169, at **4-5 (Tex.
App.--Fort Worth 2003, pet. ref'd) (not designated for publication); Banks v. State, No. 14-01-01196-CR, 2002 Tex. App. Lexis 7894, at *3 (Tex. App.--Houston [14th Dist.] 2002, no
pet.) (not designated for publication); Young v. State, 05-98-00036-CR, 2000 Tex. App.
Lexis 15, at **3-4 (Tex. App.--Dallas 2000, no pet.) (not designated for publication); Ivory
v. State, No. 14-97-00421-CR, 1999 Tex. App. Lexis 5590, at **3-5 (Tex. App.--Houston
[14th Dist.] 1999, pet. ref'd) (not designated for publication).
3. In Oreye, the Court also noted that although "standby counsel" was appointed, in fact
the defendant "both had counsel and represented himself[,]" which the court called "hybrid
representation" and disfavored; the Court noted that the defendant in those circumstances
"had more representation than criminal defendants are entitled to." Id. at 673.
4. The record includes a 2004 judgment of conviction in a jury trial in Jefferson County
for "Aggravated Robbery-a repeat felony offender."
5. In his brief, Grant appears to say the trial judge referred to the shackles in front of the
jury. The record reflects the trial judge's comment about Grant's restraints was made outside
the presence of the jury.