**Opinion issued June 16, 2015**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-14-00415-CR

————————————

**MANUEL RIVERA-SANCHEZ, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 177th District Court**
**Harris County, Texas**
**Trial Court Case No. 1339645**

---

## MEMORANDUM OPINION

A jury convicted appellant Manuel Rivera-Sanchez of capital murder and assessed his punishment at life imprisonment without parole in the Texas

Department of Criminal Justice, Institutional Division.[1]  In his sole point of error, appellant contends that the trial court violated his right to a fair trial under the United States and Texas Constitutions by requiring him to wear shackles during trial.  We affirm.

## Background

On the evening of March 1, 2012, appellant and Israel Soriano went to the Tanner Park Court apartment complex to buy prescription pills from Xavier Clinton.  The two men approached Avious Adams, a resident of the complex, and asked him if he had any Xanax, to which Adams responded "no."  Appellant then told Adams, whom appellant recognized from high school, that he had recently been released from jail for attempted murder and that he was "about to do another one.  Don't tell nobody."  Appellant and Soriano then walked off toward the playground.

Several minutes later, Adams heard two gunshots.  Adams saw two men run and get into a red pick-up truck with a woman and drive off. When Adams arrived at the playground, he saw Clinton lying on the sidewalk with gunshot wounds.  Officers responding to the scene noted Clinton had sustained a gunshot wound to his chest, a deep wound to his right wrist, and a cut on the top of his head.  The

---

[1]     *See* TEX. PENAL CODE ANN. § 19.03(a)(2) (West Supp. 2014).

officers also found two .45 caliber shell casings near Clinton's body as well as Clinton's cell phone.

Later that night, appellant, Xochi Santiago, and Soriano went to their friend Cassandra's apartment. Cassandra's roommate, Becky Vargas, testified that when appellant arrived, he was carrying a gun and acting very hyper. According to Vargas, appellant attempted to clean some blood off of his pants in her restroom and told her that he had shot a man and taken some pink pills from him because he and Soriano did not have any money to pay for them. Vargas also testified that appellant told her that Soriano had "cut [Clinton's] arm off." Vargas took a picture of the gun with her cell phone.

Appellant, Santiago, Soriano, Vargas, Cassandra, and one of Cassandra's friends then decided to go to a dance club. As they were getting into appellant's red pick-up truck, appellant shot himself in the leg. Vargas and Cassandra took appellant to the hospital in his truck. When appellant was discharged from the hospital, he called Cassandra and asked her to pick him up. Cassandra and Vargas attempted to go to the hospital but when they could not find it they returned to their apartment. Meanwhile, appellant called the police to report his truck stolen.

The next morning, Detective Millard Waters, one of the police officers investigating Clinton's shooting, received a phone call from a patrol officer informing him that someone had reported a stolen red pick-up truck and that the

person had a gunshot wound. The patrol supervisor asked appellant, Santiago, and Soriano to come to the police station for an interview. Soriano gave a written statement but appellant and Santiago were too intoxicated to be interviewed.

During the course of their investigation, Detective Waters and Sergeant Brian Harris determined that appellant and Soriano were suspects in Clinton's death. Both Adams and Vargas positively identified appellant and Vargas provided the officers with a picture of appellant's gun. Sergeant Harris and Detective Waters learned that the shell casings from the crime scene were .45 caliber, and an analysis of appellant's weapon revealed that the casings had been fired from appellant's gun. They also learned that the last incoming call to Clinton's phone was from appellant's cell phone, and that three minutes later someone used Clinton's phone to call 911. The medical examiner determined that Clinton's death was a homicide and that the cause of death was a gunshot wound to his torso.

On March 7, 2012, Sergeant Harris and Detective Waters conducted follow-up interviews with appellant and Santiago. During the interview, appellant consented to a buccal swab. When appellant later asked for a lawyer, Detective Waters stopped the interview and began interviewing Santiago. When Detective Waters returned to appellant's room, appellant immediately stated that he "wanted to tell the truth" and admitted that he had shot Clinton and taken pink pills from

4

him.  Following his confession, appellant was arrested and charged with capital murder.  Appellant pleaded not guilty, and his case was tried to a jury.

During a break on the third day of trial, and outside the presence of the jury, the following exchange took place:

> Prosecutor: Yes, Judge.  I want to point out that the way the defendant [is] positioned right now, it is possible for jurors to see his legs and feet and, therefore, see that he is shackled.
>
> The Court: You know I can't even see it now.
>
> Prosecutor: When he's out here, you can see it.  I'm pointing it out if maybe y'all can move that chair.
>
> The Court: Move that other chair back.

The record does not reflect that appellant's counsel objected to the use of shackles or requested any finding regarding shackles, or that the trial court made any specific ruling or finding regarding its decision to shackle appellant's legs.

At the conclusion of trial, the jury found appellant guilty as charged in the indictment.  The trial court sentenced appellant to life imprisonment without the possibility of parole.  Appellant timely filed a notice of appeal.

### Applicable Law

The Fourteenth Amendment of the United States Constitution and Article I, Section 19 of the Texas Constitution guarantee criminal defendants the right to a fair trial.  *See Estelle v. Williams*, 425 U.S. 501, 503, 96 S. Ct. 1691, 1692 (1976).  To ensure a fair trial, "[t]he law has long forbidden the use of visible shackles

5

during the guilt phase" of a criminal defendant's trial. *See Wiseman v. State*, 223 S.W.3d 45, 50 (Tex. App.—Houston [1st Dist.] 2006, pet. ref'd). A defendant has the right to be tried without shackles, regardless of whether they are visible to the jury. *See Bell v. State*, 415 S.W.3d 278, 281 (Tex. Crim. App. 2013).

Despite this general rule, however, courts recognize that it may be necessary for certain defendants to be restrained in exceptional circumstances. *See Deck v. Missouri*, 544 U.S. 622, 627–28, 125 S. Ct. 2007, 2011 (2005). Such circumstances may arise, for instance, when a defendant has demonstrated a propensity to escape or has threatened or assaulted courtroom personnel, thereby implicating an essential state interest, namely, courtroom security. *Wiseman*, 223 S.W.3d at 50 (citing *Deck*, 544 U.S. at 632, 125 S. Ct. at 2014). Prior to the use of shackles, however, a trial court must make a specific finding that they are necessary for reasons particular to a given case. *See Deck*, 544 U.S. at 627, 125 S. Ct. at 2011 ("[T]rial courts may not shackle defendants routinely, but only if there is a particular reason to do so."). Such determinations are reviewed under an abuse of discretion standard. *Wiseman*, 223 S.W.3d at 50. A trial court abuses its discretion when it acts without reference to any guiding rules or principles or acts arbitrarily or unreasonably. *Montgomery v. State*, 810 S.W.2d 372, 380 (Tex. Crim. App. 1990).

## Discussion

In his sole point of error, appellant contends that he was denied a fair trial by being shackled during his trial when the record does not show any specific and particularized reasons justifying the court's decision requiring him to be shackled. He further argues that he was harmed by the court's error because the shackles were visible to the jury during trial, thus infringing upon his presumption of innocence.

Here, the record reflects that appellant did not object at trial to being shackled or to the lack of specific findings by the trial court justifying the use of shackles in this case. Because appellant did not object at trial, he has waived his right to appeal on these grounds. *See* TEX. R. APP. P. 33.1(a); *Cedillo v. State*, 250 S.W.3d 145, 150 (Tex. App.—Eastland 2008, no pet.) (holding that because defendant "did not object on the record to the use of restraints in the jury's presence, this issue is waived . . . ."); *Wiseman*, 223 S.W.3d at 49 (finding defendant's failure to object at trial that his shackling violated Texas Constitution waived his right to appellate review on that ground); *see also Kelley v. State*, No. 05-09-01438-CR, 2012 WL 2628074, at *6 (Tex. App.—Dallas July 6, 2012, pet. ref'd) (mem. op., not designated for publication) (holding that shackling is not fundamental error and thus, defendant needed to object to preserve any error); *Pereida v. State*, No. 13-09-354-CR, 2010 WL 2783743, at *6 (Tex. App.—

7

Corpus Christi July 15, 2010, pet. ref'd) (memo op., not designated for publication) (concluding that defendant's failure to object to use of shackles caused complaint to be waived).

However, assuming without deciding that the trial court erred in requiring appellant to be shackled, any such error is harmless. *See Wiseman*, 223 S.W.3d at 50 (noting trial court abused its discretion in failing to state with particularity its reasons for shackling defendant). In *Bell v. State*, the Court of Criminal Appeals stated that whether error in shackling a defendant during trial is of constitutional dimension turns on "whether the record shows a reasonable probability that the jury was aware of the defendant's shackles." 415 S.W.3d at 283. Here, the record reflects that, prior to the jury's return to the courtroom, the trial court took the precautionary measure of instructing that a chair be moved to shield appellant's shackles from the jury's view. *See id.* (concluding that there was no reasonable probability that jury saw defendant's restraints because judge took precautionary measures to shield defendant's shackles from view by placing briefcases in front of counsel's table). Further, the prosecutor's statement made during a break in the proceedings—that "the way the defendant [is] positioned right now" made it possible for the jurors to see that he was shackled—suggests that it was previously impossible to see his shackles. There was no further discussion regarding appellant's shackles during the remainder of the trial. If appellant's shackles had

become visible later during the trial, it is reasonable to expect that the State or trial counsel would have brought it to the trial court's attention. *See id.* (noting it was reasonable to expect defendant to bring any audible rattling of his shackles in front of jury to court's attention). The record does not support a finding that there was a reasonable probability that the jury was aware of appellant's shackles. Consequently, any error in shackling defendant did not amount to constitutional error and is analyzed under Rule of Appellate Procedure 44.2(b).

Under Rule 44.2(b), any non-constitutional "error, defect, irregularity, or variance that does not affect substantial rights must be disregarded." TEX. R. APP. P. 44.2(b). A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict. *See Schmutz v. State*, 440 S.W.3d 29, 39 (Tex. Crim. App. 2014); *Motilla v. State*, 78 S.W.3d 352, 355 (Tex. Crim. App. 2002). In assessing the likelihood that the jury's decision was adversely affected by the error, important factors to consider include the nature of the evidence supporting the verdict, the character of the alleged error and how it might be considered in connection with other evidence in the case, and may include whether the State emphasized the error and whether overwhelming evidence of guilt was present. *Schmutz*, 440 S.W.3d at 39.

There is nothing in the record showing that the jury saw appellant's shackles or was otherwise aware that he was shackled. When the prosecutor informed the

9

trial court that appellant's shackles were visible in "the way [appellant is] positioned right now," the court took the precautionary measure of instructing that a chair be moved to shield appellant's shackles from the jury's view. Following the exchange outside of the jury's presence, there was no further discussion regarding appellant's shackles during the remainder of the trial. The record also reflects that the evidence of appellant's guilt was overwhelming. We conclude that any shackling error did not have a substantial and injurious effect or influence in determining the jury's verdict. *See Bell*, 415 S.W.3d at 283; *see also Schroeder v. State*, Nos. 13–13–00379–CR & 13–13–00380–CR, 2015 WL 1632309, at *11 (Tex. App.—Corpus Christi Apr. 9, 2015, no pet. h.) (mem. op., not designated for publication) (concluding that defendant waived alleged error regarding restraints but that even if issue had been preserved, any error would be harmless absent evidence in record that jury was aware of defendant's shackles or bracelet). Having found that the error, if any, would have been harmless, we overrule appellant's sole issue.

10

## Conclusion

We affirm the trial court's judgment.

Russell Lloyd
Justice

Panel consists of Justices Keyes, Huddle, and Lloyd.

Do not publish.   TEX. R. APP. P. 47.2(b).

11