Harvey Brown, Justice
In a single issue, Adam Alcozer appeals the trial court's order requiring that he wear physical restraints during the guilt-innocence phase of his jury trial. Because the trial court did not abuse its discretion in concluding that exceptional circumstances warranted the use of physical restraints in this particular proceeding, given this particular criminal defendant's history, we affirm.
*301 Background
Waller County law enforcement received a call from the Houston Police Department alerting them that a white Chevrolet Impala with a particular license plate number would be traveling through the area with two men carrying narcotics. The Impala belonged to Adam Alcozer. Alcozer's nephew was driving the vehicle, and Alcozer was in the front passenger seat.
When law enforcement saw the matching Impala, they attempted to stop the vehicle. Alcozer's nephew refused to stop, and a chase ensued. During the chase, Alcozer threw narcotics out the passenger window. Once the vehicle was disabled, Alcozer attempted to flee on foot but was detained. Alcozer was charged with possession of narcotics, tampering with evidence, and evading arrest.
On the Friday before his first trial setting, the trial court denied Alcozer's motion to replace his court-appointed counsel. The trial court informed Alcozer that he had the option to hire additional counsel but that his appointed counsel would remain. During the discussions, the trial court repeatedly stressed that trial would begin on the following Monday, as scheduled, without delay.
That Monday morning, January 9, 2017, Alcozer attempted suicide. In later testimony, Alcozer agreed that he had attempted suicide and that he had been depressed at the time. The record contains various references to a razor blade found taped to the underside of Alcozer's foot or shoe that morning. The details of the suicide attempt are not in the record, but Alcozer concedes it occurred. The trial court ordered a psychological evaluation and rescheduled trial.
On the morning of his next trial date, October 9, 2017, Alcozer was injured while being led into the courtroom for trial. The bailiff, S. Meskeet, testified about what had occurred. He stated that he was leading Alcozer and other criminal defendants into the courtroom. He saw that Alcozer abruptly stopped walking, which caused Meskeet concern that he might "get jumped," so he turned to observe Alcozer's actions. Meskeet testified that Alcozer "put both feet together, put his hands to his side and look[ed] at the table and just lean[ed] in for the table." Meskett described Alcozer as stiffening his body, raising himself onto his toes, and then impacting "straight in" with the table. Meskett testified that it appeared to be an intentional act, noting Alcozer's body was rigid, not a "wet noodle" like the other people Meskett has seen faint in the past.
Alcozer denied that he intentionally injured himself. He testified that he fainted and that it likely was the result of securing his neck tie too tightly.
The trial judge noted on the record that he did not see Alcozer fall into the table, but he did observe Alcozer unconscious on the courtroom floor immediately after the fall. The trial judge observed a large knot on Alcozer's head. The judge also noted that the table into which Alcozer fell was close to the jury box and the court reporter's work area. Trial was again rescheduled.
The State requested that Alcozer wear restraints when he next appeared for trial, and, after a hearing on the matter, the trial court granted the State's motion. The trial court found that Alcozer attempted suicide on his January 9 trial date (which was the date Alcozer had a razor blade taped to himself) and that he injured his head on the courtroom table on his October 9 trial date. The trial court concluded that "extreme and exceptional circumstances" existed that warranted the use of physical restraints during Alcozer's jury trial, including the danger that Alcozer presents to himself, court staff, and others *302 in the courtroom. The trial court noted that the restraints would prevent Alcozer from using common items in the courtroom, like those on counsel's table, as weapons against himself and others. The trial court specifically ordered that the restraint system used include a wheelchair to decrease visibility of the arm and leg restraints. Finally, the trial court stated that it would "give every accommodation to Mr. Alcozer so that we do not present him chained and shackled in front of the jury," but it then reaffirmed that the extreme and exceptional circumstances required the use of restraints "to protect [Alcozer] and the other people that will be in the courtroom, including defense counsel."
On the morning of the third trial date, November 6, 2017, Alcozer again had a "medical issue," which the trial court found to "reinforce[ ]" its earlier ruling that Alcozer required physical restraints during his criminal trial for the benefit of Alcozer as well as "those with whom he comes in contact" in the courtroom.
Details on the event that trial date are not in the record, but the incident occurred at the Waller County jail on the day that Alcozer was to be transported to the courthouse for trial. The record contains the trial court's brief description of events. Alcozer was injured in his jail cell, transported to the hospital, and diagnosed with a head injury. The trial court did not disclose on the record the manner in which Alcozer was injured, but the trial court found that it was a head injury, that it "fit in with the prior findings," and that the injury furthered the conclusion that "extreme and unusual circumstances exist," and "reinforced" the need for restraints. The trial court read from the medical records and found that Alcozer remained "healthy" enough to "sustain trial."
Alcozer's counsel moved for another psychiatric evaluation based on Alcozer's statements that morning that "he feels like he is a danger to himself due to some mental impairment that he's suffering." Noting that Alcozer had been evaluated by mental health professionals while awaiting trial and had been found competent in two earlier competency exams, the trial court denied the motion.
Alcozer's attorney specifically objected to the use of "handcuffs and a wheelchair" as restraints, arguing that it went beyond the original restraint plan. In response, the trial court noted that Alcozer again had been injured on the newest trial date and that the specifics of this most recent injury event had "exacerbated" the extreme circumstances the trial court had already found to warrant the use of restraints. Accordingly, the trial court overruled the objection.
The trial court had a photograph taken of Alcozer, as restrained, to demonstrate how he appeared that day. A cropped copy of the photograph is attached as Appendix I. In the photograph, Alcozer is sitting in a wheelchair in an open space within the courtroom with his legs crossed at the ankles and his hands gathered in his lap. Cf. Comeauz v. State , No. 13-11-00440-CR, 2013 WL 3203143, at *6 (Tex. App.-Corpus Christi 2013, pet. struck) (likewise incorporating wheelchair into restraint system). The black and white photograph is darker at the ends of Alcozer's shirt cuffs, and Alcozer argues there is a "glint of the metal shackles" visible. The photograph does not clearly show what is in the dark area, whether it is a shadow of Alcozer's shirt cuff, a bracelet, or the handcuffs used to restrain him. There are no other restraints arguably visible.
If a juror were to observe this dark area at Alcozer's shirt cuffs, it could have appeared to be a watch or bracelet, if not a *303 shadow. Presumably, though, Alcozer's wheelchair was not left in the open space of the courtroom during trial but, instead, positioned at his counsel's table, with Alcozer's hands gathered at his lap under the table top. The table would have further obstructed the jury's view of Alcozer's wrist restraints.
Trial continued. Alcozer pleaded guilty to the narcotic-possession and evidence-tampering charges. The trial court declared a mistrial on the evading-arrest charge, and it sentenced Alcozer to 50- and 25-year periods of confinement on the two convictions. Alcozer appealed the ruling that he be restrained during the jury trial.
Restraint of Criminal Defendant during Jury Trial
Alcozer contends that the trial court abused its discretion in ordering that he be restrained during the jury trial's guilt-innocence phase.
A. Standard of review and applicable law
The Fourteenth Amendment of the United States Constitution and Article I, Section 19 of the Texas Constitution guarantee criminal defendants the right to a fair trial. U.S. CONST. amend. 14 ; TEX. CONST. art. I, § 19 ; see Estelle v. Williams , 425 U.S. 501, 503, 96 S.Ct. 1691, 48 L.Ed.2d 126 (1976). To ensure a fair trial, the law forbids the use of visible restraints during the guilt-innocence phase of a criminal defendant's trial. See Deck v. Missouri , 544 U.S. 622, 626-27, 125 S.Ct. 2007, 161 L.Ed.2d 953 (2005) ; Bell v. State , 415 S.W.3d 278, 281 (Tex. Crim. App. 2013) ; Wiseman v. State , 223 S.W.3d 45, 50 (Tex. App.-Houston [1st Dist.] 2006, pet. ref'd). Despite this general rule, courts have recognized it may be necessary for certain defendants to be restrained under exceptional circumstances. Deck , 544 U.S. at 627-28, 632, 125 S.Ct. 2007 ; Bell , 415 S.W.3d at 281 ; Wiseman , 223 S.W.3d at 50. Exceptional circumstances may arise, for example, if a defendant "has demonstrated a propensity to escape or has threatened or assaulted courtroom personnel," Wiseman , 223 S.W.3d at 50, or if a defendant had a history of "alleged escapes and an expressed wish to die rather than be incarcerated." Jacobs v. State , 787 S.W.2d 397, 407 (Tex. Crim. App. 1990) (en banc).
The trial court exercises discretion in determining if exceptional circumstances exist. Bell , 415 S.W.3d at 281 ; Wiseman , 223 S.W.3d at 50. The trial court must make a specific finding that restraint of the particular defendant is necessary. Bell , 415 S.W.3d at 281 ; Wiseman , 223 S.W.3d at 50. A trial court abuses its discretion if it bases the use of restraints on generalized concerns about courtroom security or the seriousness of the charged offense. Bell , 415 S.W.3d at 283 ; Grayson v. State , 192 S.W.3d 790, 792 (Tex. App.-Houston [1st Dist.] 2006, no pet.). Instead, the trial court must state with particularity its reasons for restraining this particular defendant in this proceeding. Bell , 415 S.W.3d at 281 ; Wynn v. State , 219 S.W.3d 54, 59 (Tex. App.-Houston [1st Dist.] 2006, pet. ref'd).
If we conclude that the trial court abused its discretion in ordering a criminal defendant restrained during a jury trial, we conduct a harm analysis. Bell , 415 S.W.3d at 283.
B. Trial court did not abuse its discretion
The trial court assessed the need for restraints for Alcozer in light of his particular circumstances. The trial court evaluated the risk Alcozer might be to himself and those around him. This included that Alcozer had attempted suicide on the day of his first trial setting and had multiple *304 other injury incidents that coincided with later court dates. On one occasion, Alcozer concealed a razor blade, which he could have used to injure himself or others. Further, Alcozer's attorney relayed to the trial court-as the last trial date was set to commence-that Alcozer was expressing concern that he may again injure himself. The trial court expressly stated concern for the safety of Alcozer, the closely situated jurors, and the court staff positioned nearby in the courtroom. And the trial court noted the potential for courtroom materials, such as those maintained at or near counsel's table, to be used as weapons. While the handcuffs were not originally included in the restraint system, they were added only after Alcozer experienced additional injury incidents and Alcozer's counsel stated that Alcozer continued to have concerns, during trial, that he would injure himself. The trial court expressly stated that the additional injuries "exacerbated" the already extreme circumstances warranting the use of restraints and, for the safety of Alcozer and those around him, the handcuffs also were necessary.
Alcozer argues that the record contains only general references to the injury events and therefore does not support the particularized findings required to support Alcozer's restraint. We disagree. First, Alcozer repeatedly experienced injury on a date that coincided with a trial setting, supporting an inference that his injuries did not occur randomly but, instead, were self-inflicted. Second, one of these injury incidents occurred in the courtroom, reinforcing the potential for harm to those in the courtroom if Alcozer were to suffer additional trial-coinciding injuries. Third, Alcozer never objected to the characterization of any of these injury events described in the record, with the sole exception that he disputed that his fall into the courtroom table was intentional. Fourth, during the jury trial, Alcozer's counsel informed the trial court of Alcozer's own determination that he was currently a danger to himself. There is ample evidence in the record from which the trial court reasonably could have concluded that Alcozer attempted to injure himself to delay his trial and continued to have thoughts of injuring himself as trial progressed. This is not a situation in which a trial court merely expressed generalized security concerns untied to the unique circumstances of a particular criminal defendant or had shown a propensity to restrain criminal defendants as a matter of course. Cf. Long v. State , 823 S.W.2d 259, 283 (Tex. Crim. App. 1991) (holding that trial court abused discretion by ordering defendant shackled on basis of generalized concerns about courtroom security without particularized evidence that defendant had threatened violence during trial proceedings or otherwise demonstrated behavior warranting use of shackles during jury trial); Wiseman , 223 S.W.3d at 52 (on evidence that trial court routinely shackled criminal defendants "regardless of any individualized factors," holding that "trial court's repeated practice of shackling defendants is constitutional error").
We conclude that the trial court did not abuse its discretion in determining that this history of harmful ideation and injury supported the use of restraints during Alcozer's jury trial. See Jacobs , 787 S.W.2d at 407 (concluding that trial court did not abuse its discretion in ordering use of restraints on defendant who "expressed wish to die rather than be incarcerated" and had attempted escape).
Because we conclude that the trial court did not abuse its discretion, we do not reach a harm analysis. But we do note that there is no clear evidence in the record, including the photograph of Alcozer restrained, that the wrist, leg, or torso restraints were visible to the jury. Cf.
*305 Wiseman , 223 S.W.3d at 51 (record indicated that jury could see shackles). Nor is there anything in the record to support Alcozer's argument about the inferences to be drawn from incorporating a wheelchair into the restraint system. The trial court ordered the use of a wheelchair specifically to make Alcozer's arm and leg restraints less likely to be visible to the jury. Alcozer argues it had the opposite effect on the jury and invoked the jury's suspicion that Alcozer was restrained. It is speculation at best that a jury would infer from seeing a wheelchaired defendant that the defendant is bound by physical restraints.
Conclusion
We affirm.
Appendix I